**Ernest Orville BALDREE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 69741, 69742.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 27, 1989.

Rehearing Denied Nov. 8, 1989.

Jimmy Morris, Corsicana, for appellant.

John Jackson, Dist. Atty., Donald V. Phillips, Asst. Dist., Corsicana, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Ernest Orville Baldree, henceforth appellant, was twice indicted for committing the offense of capital murder. One indictment alleges in pertinent part that he murdered *Homer Howard* while in the course of attempting to commit or committing the offense of robbery of Homer Howard. The other indictment alleges that he murdered *Nancy Howard* while in the course of attempting to commit or committing the offense of robbery of Nancy Howard. See V.T.C.A. Penal Code § 19.03(a)(2). Appellant was related by marriage to the Howards. The record reflects that when the murders of Nancy and Homer occurred, appellant had recently been released from the Department of Corrections to parole status and was then living in Navarro

County with one of his sisters, Margie, and her husband, Lee Roy Howard.

The capital murder indictments were consolidated for purposes of trial. The jury was given separate charges for each alleged offense. The jury found appellant guilty of each alleged offense and, after it answered the submitted special issues in the affirmative, the trial judge, in accordance with our statutory law, see Art. 37.- 071, V.A.C.C.P., assessed appellant's punishment at death. Judgments have been entered in each of the causes. Appeal to this Court is automatic.

Appellant presents to us for review thirteen points of error. None of them concern the jury selection process nor do any of them implicate *Penry v. Lynbaugh,* — U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which was decided some time after appellant's attorney filed his brief in this cause. No effort, however, has been made by counsel to supplement the brief that he filed in this Court on April 27, 1987. Finding that none of appellant's points of error warrant this Court reversing the trial court's judgments of conviction and sentences of death, we affirm.

Because appellant challenges the sufficiency of the evidence to sustain the jury's affirmative answer to the second special issue, i.e., whether there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society, see Art. 37.071(b)(2), V.A.C.C.P., we will briefly summarize the facts that the jury heard at both stages of the trial.

Lee Roy testified that on August 20, 1986, Nancy and Homer came to his residence where they picked up appellant and presumably took him to their place so that he could help Homer build fence. It appears that appellant had previously agreed with Homer to do this. Lee Roy never again saw Homer or Nancy alive. Several days later, Lee Roy, not having seen or heard from either Nancy, Homer, or appellant, decided to go to Nancy and Homer's residence and investigate their whereabouts. He went with Margie and his stepchildren. They subsequently found Nancy's body inside the kitchen area of the trailer home residence of the Howards. The Sheriff's Department of Navarro County was notified and members of that Department immediately responded.

Lee Roy also testified that Nancy and Howard owned a two-door, white, 1979 Cadillac automobile, which was then missing from the residence. Another vehicle, a white or red pick-up that Homer owned, was also missing from the residence.

Homer's body and his pick-up truck were subsequently found approximately 200 yards from Homer's residence in a wooded area. Homer's body was then in a kneeling position next to the closed left front door of the pick-up.

It was established that jewelry had been removed from the bodies of both Nancy and Howard. The Cadillac automobile continued to be missing. Appellant was nowhere to be found at or near the scene where the bodies of the Howards were found, and his whereabouts at that time were apparently unknown.

Mark Howard, a deputy sheriff of Tarrant County, and Homer's natural son and Nancy's stepson, testified that after he was notified that his father and stepmother had been found murdered, he drove to Navarro County where he gave the police descriptions of the jewelry that each wore, such as his father's gold ring with a cluster of diamonds in the center, his stepmother's gold ring with a cluster of diamonds in the center, his stepmother's gold "mother's ring" that had seven birthstones going across it, her engagement ring which had a large cluster of diamonds on it, and her antique wrist watch which had a solid gold band. Mark also gave the police a description of his father's missing Cadillac automobile.

Brian Dunagan and Leslie Cotten, deputy sheriffs employed by the Navarro County Sheriff's Department, testified over objection that from their initial investigations they concluded that the suspected murderer of the Howards was appellant. They did not, however, give the jury any details that might have supported their conclusions.

Appellant was arrested by members of the Arlington Police Department and the Navarro County Sheriff's Department on September 3, 1986, at the Best Western Pike Motor Lodge in Arlington pursuant to arrest warrants. Appellant was "Mirandized" several times by the police. After he was arrested, he was taken before Hon. Ingrid Stromberg, an Arlington Municipal Court Judge, who "arraigned" him for capital murder and also "Mirandized" him in her capacity as a "Magistrate."

Leslie Cotten, a deputy sheriff of Navarro County who participated in appellant's arrest and also "Mirandized" appellant, transported appellant from the Arlington Municipal Jail to Navarro County where he was taken before Hon. Wanda Hartley, who, although merely the chief deputy to Justice of the Peace Aubrey Smith of Navarro County, was then "substituting" for Justice Smith because Smith had sustained a heart attack, had had "by-pass" surgery, and was then hospitalized. Hartley also "Mirandized" appellant.

At some point in time after he was arrested on September 3, 1986, appellant told Cotten that he wanted an attorney, after which Cotten ceased questioning appellant. Cotten did not thereafter speak with appellant until September 9, 1986, when, pursuant to appellant's request through David Eastman, a Navarro County Jail detention officer, he and another deputy sheriff of Navarro County, James "Bubba" Jones, went and visited with appellant in the Navarro County Jail, after which appellant was again "Mirandized" by them. When told that if he had a lawyer, the lawyer would not want him speaking with them, appellant told Cotten and Jones: "To hell with the lawyer, and I'll tell you about it." Thereafter, appellant gave Cotten and Jones an oral confession of guilt to the murders of Homer and Nancy, which oral confession was ruled admissible by the trial judge after he conducted a "Jackson v. Denno" type hearing prior to trial.

For reasons not explicated in the record, appellant was formally appointed an attorney the next day, September 10, 1986, by the trial judge in this cause, which occurred after he had given Cotten and Jones his oral confession of guilt to the murders. Appellant, however, was not indicted by a Grand Jury of Navarro County until September 25, 1986.

Over objection, both Cotten and Jones testified to the oral confession of guilt that appellant had given them. Appellant told Cotten and Jones that he had gone to Homer's and Nancy's place to help Homer build fence. Appellant also told Cotten that "he did, in fact, kill the two people and that he had taken the stuff that he had taken from them to the Dallas area, to Arlington, Texas, and disposed of it ... by delivering it to Larry Bevers in Arlington." We point out that Bevers' name is spelled several different ways in the record. We have taken the liberty of spelling it "Bevers" which is according to the way he spelled it on an affidavit that he signed that is in the record. Appellant told Cotten and Jones that he had "shot Mr. Howard in the back of the head with a .22 rifle and removed his wallet from his pocket, and took therefrom a little over one hundred dollars out of the wallet." Appellant also told Cotten and Jones that he then went to the Howard's trailer home residence and, after first speaking to Nancy, shot her several times with the rifle in the kitchen part of the residence, where her body was later found. Appellant also stated to Cotten and Jones that "he took their jewelry off their fingers and their watches off of their arms, hands ... and took [the jewelry and the] '79 Cadillac sedan ... to Arlington and disposed of it up there." The Cadillac, however, was later found in Fort Worth. Appellant told Cotten and Jones that Bevers and Billy "Rerun" Dunn had helped assist him in disposing of the vehicle, and that he had given the rifle to "Rerun." Evidence was adduced that the rifle that appellant stated that he used to murder the Howards with was recovered from "Rerun's" possession.

Other testimony established that appellant sold or gave to "Rerun" and Bevers most, if not all, of Homer's and Nancy's jewelry, as well as giving to "Rerun" the .22 rifle. It appears that by the time appellant was arrested on September 3,

1986, most, if not all, of the jewelry that Bevers and "Rerun" had received from appellant was turned over to the Arlington police by them. However, at that time, neither members of the Arlington police nor members of the Navarro County Sheriff's Department had any knowledge where the rifle might then be located. Cotten and Jones obtained this information when they took from appellant his oral confession of guilt on September 9, 1986.

Dr. Terry Welke, a pathologist with the Dallas County Medical Examiner's Office, testified he performed autopsies on the bodies of Nancy and Homer. Welke testified that the cause of Homer's death was a gunshot wound to the left side of the neck and that the cause of Nancy's death was three gunshot wounds to the head, neck, and chest.

Wesley Young and D. Kyle Barnett, who were incarcerated in the Navarro County Jail with appellant after he was arrested, testified that appellant made oral admissions to them that he had murdered the Howards. Carl White also testified that prior to when appellant was arrested, appellant admitted to him that he had shot and murdered two individuals.

After the State rested, appellant also rested. Thereafter, the jury returned its verdicts finding appellant guilty of capital murder of both Homer and Nancy. The trial judge then conducted a punishment hearing.

Don Sullivan, a Detective Sergeant with the Navarro County Sheriff's Department, testified in the capacity of a fingerprint expert. He matched up appellant's known prints with those found in penitentiary packets that were admitted into evidence. The penitentiary packets reflect that in 1960 appellant was convicted of burglary in Dallas County and received two years' confinement in the Department of Corrections; in 1961 he received a two year penitentiary sentence for committing several burglaries of coin operated machines in Dallas County; in 1965 he received five years' confinement in the penitentiary for committing a burglary in Tarrant County; in 1969, in Dallas County, appellant received sen-

tences of five years' and eight years' confinement in the penitentiary for committing several different forgery offenses; in 1975 he was convicted of escape in Madison County for which he received five years' confinement in the penitentiary; and in 1984 he was convicted in Dallas County of possession of a firearm by a felon and several felony thefts for which he received ten years' confinement in the penitentiary. When appellant committed the murders he had been released by the authorities to parole status. The above number of final convictions totals 13. At the time of trial, appellant was 44 years of age. Margie Howard, appellant's sister and Lee Roy Howard's wife, testified at the punishment stage of the trial that she "guessed" that since 1960 appellant had been a free man for a total of only 2 years. George Scott, Captain of the Navarro County Sheriff's Department and administrator of the Navarro County Jail, testified for appellant and Scott testified that since appellant had been incarcerated in the jail "he hasn't given me any problems and that Scott had not "seen him commit any acts of violence or anything like that in the jail." However, on cross-examination, Scott testified that appellant had been "in isolation for some time" and that this type incarceration did not leave appellant "a whole lot of room to get in any kind of trouble."

Wesley Young again testified and he testified that appellant told him when they were incarcerated in the Navarro County Jail that "if he had it to do all over again [murder the Howards], he would do it the same way."

Gary Wayne Brookes, a Grand Prairie Police Officer; Ronald Hale, a Dallas Police Officer; Mark D. Labby, a Grand Prairie Police Officer; Lee Turrubiart, a Limestone County law enforcement official; and J.L. Oxford, a Dallas County Deputy Sheriff, all testified that in their opinions appellant had a bad reputation for being a peaceable and law-abiding citizen. Scott also so testified.

Margie Howard, one of appellant's eleven brothers and sisters, six boys and six girls, nine of whom were still alive at trial,

testified that at the time Homer and Nancy were murdered appellant was living with her and Lee Roy. She testified that appellant was "always a good child and loving child"; "He loves old people usually and all that stuff. I mean, he's always loved all of us, we love him"; and was good at taking care of other individual's children." Margie testified that when appellant was thirteen years of age "We almost lost him" because he had "a polio spinal, whatever you want to call it; and he run about 105 or 106 temperature for about a week or longer", after which "He acted quite a bit different." Margie testified that when their father came down with cancer, she and appellant bathed him and changed his colostomy bags. Margie also testified that she never witnessed appellant commit any act of violence and had no knowledge of appellant committing any crime of violence. Margie further testified that, except for being able to write his name, appellant was illiterate. She asked the jury not "to kill my brother."

The testimony of Nell Spainhower, another sister of appellant who testified, was cumulative to Margie's.

Thereafter, the jury returned its affirmative answers to the submitted special issues, after which the trial judge assessed appellant's punishment at death by lethal injection.

As previously pointed out, appellant presents to us thirteen points of error to review.

■ Appellant asserts in his ninth point of error that "There [is] insufficient evidence to find a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society."

A majority of this Court has held that the facts of the crime itself can be sufficient to support an affirmative answer to the "probability" special issue. However, we need not decide the issue on the facts of the murders themselves because there is also evidence of appellant's age, 44, his prior criminal record, and his "bad" reputation for being a peaceable and law-abiding citizen, all of which is probative of future

dangerousness. For the most recent discussion on this subject, see *Lackey v. State* (Tex.Cr.App. No. 69,144, June 14, 1989).

Taking into consideration the facts that the jury heard concerning the murders of Homer and Nancy, who were related to him by marriage, appellant's age, 44 when he committed the offenses, appellant's prior criminal record, and his "bad" reputation for being a peaceable and law-abiding citizen, we find that any rational trier of fact would have answered the second special issue or the "probability" question in the affirmative. Appellant's ninth point of error is overruled.

■ Appellant asserts in his first point of error that "The trial court erred in failing to grant appellant's requested charge setting forth the elements of the offense." We disagree.

Except for the names of the victims, Homer Howard and Nancy Howard, in pertinent part each indictment is identically worded. We will use the indictment that concerned the capital murder allegation of the murder of Homer Howard. We pause to point out that appellant did not at trial, nor does he on appeal, complain about the wording of either indictment. The indictment concerning Homer alleges in pertinent part that appellant

did then and there in the course of attempting to commit and committing robbery of Homer Howard, did then and there intentionally commit murder by causing the death of an individual, Homer Howard, by shooting him with a firearm.

The "application" paragraph of the charge to the jury reads as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the Defendant, ERNEST ORVILLE BALDREE, did, in Navarro County, Texas, on or about August 20, 1986, intentionally caused the death of an individual, to wit: Homer Howard, by shooting him with a firearm in the course of committing robbery of Homer Howard, you will find the

Defendant guilty of Capital Murder, committed in the course of robbery.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty of Capital Murder.

Appellant's requested charge reads as follows:

Before you would be warranted in convicting the defendant of capital murder, you must find from the evidence beyond a reasonable doubt not only that on the occasion in question the defendant was engaged in the commission or attempted commission of the felony offense of robbery, as defined in this charge, but also that during the commission of the robbery or attempted commission thereof, if any, the defendant shot the deceased with the intention of thereby killing the deceased. Unless you find from the evidence beyond a reasonable doubt that the defendant, on said occasion, specifically intended to kill the deceased when he shot the deceased, if he did shoot the deceased, you cannot him of the offense of capital murder.

Appellant argues under this point of error that "The court's charge is not in the time-honored form and does not first state the elements and substantive law and thereafter apply the same to the facts. A proper charge is set forth in Mc Clung's 'Jury Charges', revised edition 1983, page 75 ..." We agree with appellant that the "application" paragraph of the hypothetical charge that is set out on page 75 of Mc Clung's work is vastly superior to the "application" paragraph of the charge that was actually given by the trial judge. However, we also find that the "application" paragraph of the charge that was actually given is vastly superior to the one requested by appellant.

By the "application" paragraph of the charge that was given, before the jury could find appellant guilty of capital murder, it was required to find beyond a reasonable doubt each element that causes the offense of murder to be elevated to capital murder pursuant to V.T.C.A. Penal Code § 19.03(a)(2). We also observe that appellant's requested charge would not have required the jury, before finding appellant guilty of capital murder, to have found that appellant intentionally killed either victim, an essential element of the offense of capital murder and the allegations of each indictment.

Although we do not approve the "application" paragraph that was actually given by the trial judge, the issue that we must resolve is not whether the charge that was actually given should be approved by this Court; the issue instead is whether the charge that was actually given sufficiently protected the rights of appellant. We find that it did.

It is axiomatic in our law that "When a refused charge is adequately covered by the charge given, no harm is shown. *Davis v. State*, 651 S.W.2d 787, 792 (Tex. Cr.App.1983); *Viduarri v. State*, 626 S.W.2d 749, 750 (Tex.Cr.App.1981)." *County v. State* (Tex.Cr.App. No. 69,793, March 29, 1989, at page 18 of slip opinion). We find that the "application" paragraph that was actually given by the trial judge sufficiently required the State to establish beyond a reasonable doubt each element of the offense of capital murder, as alleged in the indictments. Appellant's first point of error is overruled.

Appellant challenges in several points of error the admissibility of the oral confession of guilt that he gave to Deputy Sheriffs Cotten and Jones. The trial judge has entered written findings of fact, which we find are supported by evidence, as well as conclusions of law, to support his finding that appellant's oral confession of guilt to Cotten and Jones was admissible.

Specifically, appellant asserts in his second point of error that "The trial court erred in admitting, over appellant's timely objection, the oral confession obtained by officers after they executed an invalid warrant of arrest that had been issued without probable cause"; in his third point of error he claims that "The trial court erred in admitting the oral confession because the officers knew the location of the fruits and instrumentality of the crime prior to the

giving of the confession"; in his twelfth point of error appellant claims that "The trial court erred in failing to charge the jury that an oral confession must be corroborated"; in his thirteenth point of error appellant asserts that "The trial court erred in receiving evidence of oral statement where appellant, while under arrest, requested an attorney but one was not appointed until the day following such oral statement, which was seven days after the request."

We will now address his points of error numbered two and three and will later address his points of error numbered twelve and thirteen.

As previously pointed out, prior to trial the trial judge conducted a *"Jackson v. Denno"* type hearing concerning the admissibility of appellant's oral confession of guilt to Deputy Sheriffs Cotten and Jones. We will now highlight the testimony that was adduced at the hearing, which the trial judge obviously used in composing his findings of fact and conclusions of law and his ruling that appellant's oral confession of guilt was admissible evidence at his trial.

It was established at the hearing that prior to appellant's arrest, the Arlington police had obtained from Bevers a detailed affidavit that reflected that appellant sold to Bevers for a total of $600 most of the jewelry that he, appellant, had removed from the bodies of the Howards, and that the Arlington police had recovered this property from Bevers, as well as having recovered other property from "Rerun." Cotten also testified that Bevers was later arrested, after appellant was arrested, on an arrest warrant from Navarro County, as a result of which "the rest of the jewelry that [Bevers] had in his possession was returned to us." Cotten did not amplify on what other property he obtained from Bevers, and the record does not so reflect. Bevers' affidavit also states that appellant attempted to sell him the Cadillac automobile and that appellant admitted to him that he had committed "the murders in Navarro County."

Prior to appellant's arrest, the Arlington police also had an affidavit from Carl Wayne White which stated that appellant admitted to White that he had killed two people in Navarro County.

The evidence at the hearing also established that two Navarro County arrest warrants issued on August 28, 1986, for appellant's arrest. The affidavit for the arrest warrants reflects in part that several days after the murders, but before he was arrested, appellant was seen driving a 2 door white colored Cadillac automobile which matched the description of Homer's Cadillac automobile.

Officer Don Allred, a narcotics officer with the Arlington Police Department, testified that he and others arrested appellant on September 3, 1986, pursuant to "two felony warrants on the teletype." These are the two Navarro County arrest warrants. However, appellant was also arrested pursuant to "a blue warrant issued from the parole office, his parole officer in Waco, Mr. Sam King, for parole violation." Thus, at the time of appellant's arrest, three arrest warrants were then extant. The evidence at the hearing also established that at the scene of appellant's arrest, appellant was thoroughly "Mirandized" by the arresting officers as well as later by Judge Stromberg and "Justice of the Peace" Hartley.

Appellant made no challenge during the hearing about the sufficiency of any of the *"Miranda"* warnings that he received, nor does he challenge on appeal the legality of the acts of substitute "Justice of the Peace" Hartley when she "Mirandized" appellant. Nor did he challenge at the hearing or on appeal the validity of the "blue warrant of arrest" that the parole authorities had issued.

It was also established at the hearing that after appellant was arrested, and after he told Cotten that "he did not want to say anything to us at that time, that he was not being smart, that as soon as he had an attorney present and appointed to him and present with him that he would advise us everything that happened," Cotten did not further question appellant, nor is there any evidence that any other police officer at-

tempted to question appellant about the murders.

It was not until September 9, 1986, as a result of being notified by David Eastman, a Navarro County Jail detention officer, that appellant wanted to speak with them, that Cotten and Jones went and visited with appellant in the Navarro County Jail. Before speaking with appellant, Cotten and Jones again "Mirandized" appellant. When they told appellant "that if your attorney was present, he would not want you to talk to us, would not let you [talk with us]," appellant responded: "I don't give a damn about what an attorney says. I want to tell you what happened.' At that point, he did advise us of what happened." Jones testified in the jury's presence that appellant said "To hell with the lawyer, and I'll tell you about it."

In considering whether the trial judge correctly ruled that appellant's oral confession of guilt was admissible, we will focus our attention on the fact that appellant told Cotten and Jones that he murdered the Howards with a .22 calibre rifle and that "he had taken the .22 caliber rifle ... into Grand Prairie and given [sic] it to a Billy Rerun Dunn ..." Jones testified that a .22 calibre rifle was later recovered from "Rerun's" residence in Grand Prairie, and that the rifle matched the description of the rifle that appellant told him and Cotten that he used to kill the Howards with. There is no evidence that when appellant told Cotten and Jones that he had given the rifle to "Rerun" any police official then knew of its whereabouts, notwithstanding that the Arlington police had previously questioned "Rerun."

 In *Marini v. State*, 593 S.W.2d 709 (Tex.Cr.App.1980), a panel of this Court held that when an oral confession of the accused is offered into evidence pursuant to Art. 38.22, § 3(c), V.A.C.C.P., if any one of the assertions of facts or circumstances of the accused's oral confession is found to be true and conduce to establish his guilt, such as the finding of secreted or stolen property or the instrumentality with which the accused states he committed the offense, then the oral confession is admissible in its entirety. Also see *Hayes v. State*, 502 S.W.2d 158 (Tex.Cr.App.1973). We agree with and approve what the panel opinion held in *Marini*. Thus, under *Marini* it is not necessary that *all* of the accused's oral statements be found to be true and conduce to establish his guilt; the oral confession is admissible in its entirety if only one of the assertions within the oral confession, such as the finding of secreted or stolen property or the instrumentality with which the accused states he committed the offense, whose whereabouts were unknown to the police when the accused made his oral confession, is found to be true and conduce to establish his guilt. Since *Briddle v. State*, 742 S.W.2d 379 (Tex.Cr.App.1987), it is now no longer necessary that the officer to whom the accused gave his oral confession directly find the secreted or stolen property or the instrumentality with which the accused states he committed the offense; it is now permissible for some third person to find the item, provided that had the officer looked where the accused stated the item would be, he could have, as the third person did, found the property.

Because we do not know from this record what personal property appellant stole from the Howards, that was not then in the possession of the police, we will assume for argument purposes that when appellant gave his oral confession to Cotten and Jones the police already had possession of all of the stolen personal property that appellant took from the Howards, including Homer's Cadillac automobile. Did appellant's statement to Cotten and Jones that led to the recovery of the .22 calibre rifle from "Rerun", about which there is no evidence that any of the police officers who were involved in this case up to that point in time knew its whereabouts, cause appellant's entire oral confession to be admissible? We hold under *Marini* and *Hayes* that it did.

 We next address appellant's assertion that his oral confession of guilt was inadmissible because the police unlawfully arrested him. In his claim, appellant discusses only his assertion that the two Na-

varro County arrest warrants were unlawfully issued. Appellant, however, overlooks the fact that before he was arrested there was a third warrant in existence for his arrest. This is the parole "blue warrant of arrest."

In *Dusek v. State*, 467 S.W.2d 270 (Tex.Cr.App.1971), also see *Haynes v. State*, 468 S.W.2d 375 (Tex.Cr.App.1971), in which there were three felony arrest warrants, but only two of the affidavits were put in the appellate record, this Court held that "If the appellant desired to attack the legality of his arrest and subsequent search upon this basis, it was incumbent upon him to see that [all] the affidavits were properly in the appellate record. This he has not done; therefore, the legality of his arrest and subsequent search is not presented for review (Citations deleted) . . . If any one of the felony arrest warrants was valid, the arrest and subsequent search of the appellant would have been proper under the circumstances described."

In this instance, not only is the "blue arrest warrant" not in the appellate record of this cause, the record is clear that appellant never challenged its validity in the trial court. "If the appellant desires to attack the legality of his arrest and subsequent search upon the basis that the affidavits for arrest warrant did not reflect probable cause [or issued unlawfully], it was incumbent upon him to see that the affidavits were properly in the appellate record. Without such affidavits the legality of the arrest and subsequent search is not presented for review. (Citations omitted.)" *Haynes v. State*, 468 S.W.2d at pp. 377–378.

Appellant's second and third points of error are overruled.

■ As part of his attack on the admissibility of his oral confession of guilt, appellant asserts in his thirteenth point of error that "The Court received evidence of the oral statement given by Appellant, while under arrest, after requesting an attorney but before one was appointed."

As previously pointed out, it is undisputed that after appellant was arrested in Arlington, but before he gave his oral confession of guilt to Cotten and Jones, he told Cotten that he wanted to first speak to an attorney before he spoke with Cotten about his complicity in the murders of Homer and Nancy Howard. Cotten immediately ceased questioning appellant at that point in time. There is no evidence that after this, and before appellant initiated the conversation with Cotten and Jones, that any attempt was made to question appellant by any police officer. It is also undisputed that several days after appellant was arrested and placed in the Navarro County Jail, pursuant to appellant telling Eastman, a detention officer working in the Navarro County Jail, that he wanted to talk with Cotten, both Cotten and Jones went and communicated with appellant, with appellant first receiving from them another "Miranda" warning, after which appellant gave his oral confession of guilt to Cotten and Jones. There is no reason given in the record why appellant, a hardened criminal who had served many sentences in the Department of Corrections and who had been incarcerated for approximately at least five days in the Navarro County Jail without any showing that the jail authorities were either bothering or harassing him, which might have caused him to summon Cotten and Jones, wanted to discuss with Cotten and Jones his complicity in the Howard murders other than he apparently had an awfully strong desire and willingness to have a general discussion with Cotten and Jones about the Howard murders. There is also nothing in the record that might reflect or indicate that appellant's oral confession to Cotten and Jones was not given voluntarily.

The issue that we must resolve is whether appellant intelligently, knowingly, affirmatively, and voluntarily waived his previously invoked right to have the assistance of counsel before he gave Cotten and Jones his oral confession of guilt.

In *Williams v. State*, 566 S.W.2d 919, 922–923 (Tex.Cr.App.1978), this Court pointed out that a waiver of the right to the assistance of counsel, after such right is invoked, is given particular scrutiny by the courts, and we do so in this cause. For

such a waiver to be effective, the law requires that the accused must initiate the contact with the police that leads to the waiver, and not vice versa. See *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). In this instance, the record is undisputed that it was appellant, and only appellant, who, for reasons not reflected in the record, initiated contact with both Cotten and Jones. However, the law also requires that the contact initiated by the accused must be of a type that evinces a willingness and desire for a generalized discussion about the ongoing investigation. See *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983). In this instance, the record is undisputed that when appellant summoned Cotten and Jones, he clearly evidenced a willingness and desire to have with them a generalized discussion about their investigation into the Howard murders, and for no other reason.

In his argument under this point of error, appellant appears to speculate that because he was not appointed an attorney until September 10, 1986, the day after Cotten and Jones obtained his oral confession of guilt, and because he had been incarcerated in the Navarro County Jail from September 3, 1986, through September 9, 1986, that this prevented him from waiving his previously invoked right to the assistance of counsel, or that this establishes that the State failed to show that appellant had intelligently, knowingly, affirmatively, and voluntarily waived his right to the assistance of counsel when he gave his oral confession of guilt to Cotten and Jones. We, of course, are bound by the record of this cause in deciding the issue, and thus do not have the luxury of speculating as counsel does on what might have happened had appellant been appointed counsel after he was arrested and prior to the time he initiated contact with Cotten and Jones through Eastman. Furthermore, under the circumstances of this case, we find nothing in our law, nor has appellant referred us to any provision of our law, that might have required the trial judge to appoint appellant counsel at any time between September 3, 1986, and Sep-

tember 9, 1986, or prior to the time when appellant gave his oral confession of guilt to Cotten and Jones.

Finding that the record is sufficiently clear that appellant intelligently, knowingly, affirmatively, and voluntarily waived his right to the assistance of counsel prior to when he gave his oral confession of guilt to Cotten and Jones, we overrule appellant's thirteenth point of error.

■ Appellant complains in his seventh and eighth points of error about the trial court admitting into evidence the oral statements that he made to Wesley Young and D. Kyle Barnett when they were incarcerated together in the Navarro County Jail. We overrule his points of error.

This Court has long held that a statement by an accused person to a fellow cellmate that was voluntary, that did not stem from custodial interrogation, and that was not obtained by the cellmate while acting as an agent of law enforcement officials is admissible evidence against the accused at his trial. See *Pinkerton v. State*, 660 S.W.2d 58, 63–64 (Tex.Cr.App.1983). In this instance, the statements of Young and Barnett are clearly admissible under this rule of law.

Appellant's reliance on *Cohron v. State*, 400 S.W.2d 338 (Tex.Cr.App.1966), is clearly misplaced because the opinion makes it clear that when the defendant made his oral statement in the nature of a confession he was under arrest and in the custody of the police. Appellant's reliance upon *Easley v. State*, 493 S.W.2d 199 (Tex.Cr.App. 1973), is also misplaced, simply because *Easley* was decided prior to the 1977 amendment to Art. 38.22, V.A.C.C.P. For further discussion on this subject, see *Chambliss v. State*, 647 S.W.2d 257, 260 (Tex.Cr.App.1983). Appellant's seventh and eighth points of error are overruled.

■ Appellant asserts in his twelfth point of error that "The trial court erred in failing to charge the jury that an oral confession must be corroborated." Appellant acknowledges that a trial judge need not instruct the jury on corroboration when the corpus delecti is established by other evi-

dence. See *Honea v. State*, 585 S.W.2d 681 (Tex.Cr.App.1979).

Since *Self v. State*, 513 S.W.2d 832, 834–835 (Tex.Cr.App.1974), was decided by this Court, in order for the prosecution to establish the corpus delecti of the crime of murder, or the "body or substance of the crime of murder," it must establish (1) the body or the remains of the body of the deceased must be found and identified, and (2) the death of the deceased was caused by the criminal act of another. We find and hold that the State clearly established beyond a reasonable doubt the corpus delecti of the crime of murder as to both Homer and Nancy independently of appellant's oral confession. Also see *Streetman v. State*, 698 S.W.2d 132, 134 (Tex.Cr.App.1985). Appellant's twelfth point of error is overruled.

■ Appellant asserts in his fifth and sixth points of error that "The trial court erred in allowing [Navarro County Deputy Sheriffs] Bryan Dunagan [and Cotten] to testify, over appellant's timely objection, that prior to appellant's arrest he was a 'suspect.'" We are compelled to disagree with appellant.

Given the facts that the jury heard, that appellant was presumably the last person to have seen the Howards alive, that appellant's whereabouts were unknown for at least five days, that when the Howards' bodies were found they had been stripped of their personal effects, and that Homer's Cadillac automobile was also missing, we must agree with the State that the jury was only told through Dunagan and Cotten's testimony what common sense dictates, that appellant was then the primary suspect to the Howard murders. Furthermore, neither Dunagan nor Cotten testified to any details that might have supported their conclusions. We disagree with appellant that "Allowing the two officers to testify that Appellant was a 'suspect' is tantamount to allowing the officers to testify that in their opinion Appellant was guilty." In any event we are unable to understand how appellant was harmed by the conclusory remarks, especially in light of the admissible evidence the jury actually heard that implicated appellant to the two murders. E.g., *Davis v. State*, 642 S.W.2d 510 (Tex.Cr.App.1982), and the cases cited on page 512. Appellant's fifth and sixth points of error are overruled.

■ Appellant claims in his tenth point of error that "The trial court erred in failing to charge the jury on the lesser included offense of murder."

In determining whether a lesser included offense instruction must be given, a majority of this Court has long subscribed to a two-step analysis, which was first enunciated in the panel opinion of *Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981), and later adopted by a majority of this Court in *Aguilar v. State*, 682 S.W.2d 556 (Tex.Cr.App.1985). The two-step analysis requires first, that the lesser included offense is included within the proof necessary to establish the offense charged, and second, there must be some evidence in the record that if the defendant is guilty he is guilty only of the lesser included offense.

Although appellant has clearly satisfied the first part of the analysis, we find that he has failed to satisfy the second part of the analysis because there is no evidence that appellant was guilty only of the lesser included offense of murder. Appellant's tenth point of error is overruled. But see and compare *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

Appellant claims in his eleventh point of error that "The trial court erred in failing to sustain appellant's timely objection to inflammatory and prejudicial photographs." Appellant acknowledges this Court's case law rule that photographs of the deceased's body are admissible if the equivalent oral testimony would be admissible. See *Havard v. State* (Tex.Cr.App. No. 69,581, June 14, 1989), rehearing granted on other grounds. Also see *James v. State*, 772 S.W.2d 84 (Tex.Cr.App.1989); *Rogers v. State*, 774 S.W.2d 247 (Tex.Cr.App.1989); *McGee v. State*, 774 S.W.2d 229 (Tex. Cr.App.1989); and *Purtell v. State*, 761

S.W.2d 360 (Tex.Cr.App.1988). However, appellant argues the probative value of the photographs was outweighed by their prejudicial effect. We disagree. We have carefully examined the photographs and do not find them so gruesome as to render them inadmissible. Appellant's eleventh point of error is overruled.

We now come to appellant's fourth point of error, and the last point of error that we will review. Appellant asserts that "The State failed to prove the cause of death." We must disagree with appellant and agree with the State. The State argues that given the testimony of Dr. Welke, the oral confession of guilt that appellant made to Cotten and Jones, and his jailhouse admissions to Young and Barnett, the evidence is more than sufficient to show that the State proved the cause of Homer and Nancy's deaths. Appellant's fourth point of error is overruled.

Having overruled all of appellant's points of error that have been presented to us to review, we affirm the trial court's judgments of convictions and the sentences of death.

CLINTON, MILLER and DUNCAN, JJ., concur in the result.