02-11-270-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00270-CR

 

 


 
 
 Steven Alexander Flenoy
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 30th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          A
jury convicted Appellant Steven Alexander Flenoy of robbery, and the trial
court found two enhancement paragraphs true and sentenced him to fifty years’
confinement.  In two points, Flenoy challenges the admission of his recorded
oral statement and argues that the trial court erred in its charge to the jury. 
We will affirm.

II.  Background

          Jennifer
Pruitt worked as a taxicab driver in Wichita Falls.  Just before 11:00 p.m. on
October 8, 2009, she was dispatched to the Budget Inn to pick up a
customer from room number 3.  When Pruitt arrived at the hotel and honked
her horn, Flenoy ran from behind the hotel, jumped into the front seat of Pruitt’s
vehicle, and told her to take him to 37th and Jacksboro.  Pruitt headed in that
direction but also asked Flenoy to show her that he had money to pay for the
cab ride.  Flenoy dug around in his pockets but never showed Pruitt any money.

          Upon
arriving at 37th and Jacksboro, Pruitt told Flenoy that he owed her $8 for the
ride, and Flenoy stepped out of the vehicle, took off his jacket, and began
“messing around” in his pockets.  Pruitt noticed Flenoy take something out of
his pocket and put it behind his back.  Flenoy told Pruitt that he wanted to
run over to a nearby house to grab someone, and he asked Pruitt if she could
drive them to another location.  When Pruitt said no and demanded the $8,
Flenoy jumped into the vehicle’s back seat and tried to put Pruitt in a
headlock.  Pruitt managed to open her door and stick her head out, but when she
tried to drive off, Flenoy made his way to the front seat, pulled out a gun, put
the gun against Pruitt’s ribs, and told her to give him “all the company money.” 
Pruitt said that she did not have any money, and Flenoy responded that he was
going to kill her if she did not give him the money.  Pruitt heard a “click,”
which she thought was the sound of the gun jamming, and then the two started
fighting—Pruitt elbowed Flenoy’s face, but Flenoy punched Pruitt’s face, pulled
her hair, and scratched at her back.  At some point during the confrontation,
Pruitt “smashed” on the gas pedal, and Felony grabbed the wheel, causing the
vehicle to drive between a fence and a mailbox.  During the struggle, Pruitt
managed to kick Flenoy in the chest and out of the vehicle, but he jumped back
inside.  Pruitt kicked Flenoy out of the vehicle a second time and was able to
drive away and call for help.  Detective Allen Killingsworth later interviewed
Flenoy, who made incriminating statements.

III. 
Invocation and
Waiver of Right to Counsel

          In
his first point, Flenoy argues that the trial court abused its discretion by
admitting in evidence his recorded oral statement.  He contends that the
statement was involuntary and taken in violation of his Fifth Amendment and
article I, section 10 rights to counsel because the investigator
continued questioning Flenoy about the offense after he invoked his right to
counsel and because he did not waive his right to counsel by initiating further
communications with the investigator.

          We
use the motion to suppress standard of review.[2]  We review a trial
court’s ruling on a motion to suppress evidence under a bifurcated standard of
review.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We give almost total
deference to a trial court’s rulings on questions of historical fact and
application-of-law-to-fact questions that turn on an evaluation of credibility
and demeanor, but we review de novo application-of-law-to-fact questions that
do not turn on credibility and demeanor.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State,
68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

          When
a suspect asks for a lawyer, interrogation must cease until counsel has been
provided or the suspect initiates further communication with the police.  Edwards
v. Arizona, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1885 (1981).  But
not every mention of a lawyer will invoke the right to the presence of counsel
during questioning; the suspect must unambiguously request counsel.  Davis
v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355 (1994); State
v. Gobert, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009).  The test is
objective:  did the suspect sufficiently articulate clearly his
desire to have counsel present such that a reasonable police officer in the
circumstances would understand the statement to be a request for an attorney?  Davis
v. State, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010), cert. denied,
132 S. Ct. 122 (2011).  When reviewing alleged invocations of the right to
counsel, we look to the totality of the circumstances surrounding the
interrogation, as well as the alleged invocation, to determine whether a
suspect’s statement can be construed as an actual invocation of his right to
counsel.  Dinkins v. State, 894 S.W.2d 330, 351 (Tex. Crim. App.), cert.
denied, 516 U.S. 832 (1995).

          When
an accused has invoked his right to counsel but waives that right by initiating
communication with police or law enforcement officials, “the law requires . . . that
the contact initiated by the accused must be of a type that evinces a
willingness and desire for a generalized discussion about the ongoing
investigation.”  Baldree v. State, 784 S.W.2d 676, 686 (Tex. Crim. App.
1989), cert. denied, 495 U.S. 940 (1990).  A valid waiver of the right to
counsel cannot be established by showing that the accused merely responded to
further police-initiated custodial interrogation.  State v. Consaul, 960
S.W.2d 680, 688 (Tex. App.—El Paso 1997, pet. dism’d), cert. denied, 526
U.S. 1160 (1999).

          Flenoy
mentions a lawyer several times during his recorded statement.  The first such exchange
is as follows:

          [Flenoy]:    I
uh I have a lawyer.  Could I have him present?  Uh Mr. Brennon Brady.

 

          [Detective
Killingsworth]:   Okay.

 

          [Flenoy]:    Um
because I was, you’re saying aggravated robbery, and I have no idea what this
is.

Flenoy’s
statement merely (1) declared that he had a lawyer and (2) questioned
whether it was permissible for him to have his lawyer present during
questioning.  Flenoy’s statement was not a clear and unambiguous request for
counsel requiring Detective Killingsworth’s questioning to terminate but,
instead, a query about the interrogation process.  See Gutierrez v. State,
150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding
that appellant did not invoke his right to counsel by asking, “Can I have him
present now?”); Halbrook v. State, 31 S.W.3d 301, 302, 304 (Tex.
App.—Fort Worth 2000, pet. ref’d) (holding that appellant had not invoked his
right to counsel when he asked, “Do I get an opportunity to have my attorney present?”);
see also Mbugua v. State, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st
Dist.] 2009, pet. ref’d) (holding that appellant did not clearly and
unambiguously invoke right to counsel by questioning, “Can I wait until my
lawyer gets here?”).

          The
next exchange in which Flenoy mentions a lawyer follows Detective
Killingsworth’s statement that Flenoy may have his lawyer present if he so
desires:

          [Flenoy]:    Basically,
if I wanted my lawyer present, then could you just go send for my lawyer?

 

          [Detective
Killingsworth]:   Well, you know, it . . . doesn’t work
that way really.

 

          [Flenoy]:    Oh.

 

          [Detective
Killingsworth]:   I mean it’s not like we probably couldn’t uh . . . .”

 

          [Flenoy]:    So
I’m being charged . . . with aggravated robbery?

Flenoy’s
statement is not a clear and unambiguous request for counsel requiring
Detective Killingsworth’s questioning to terminate because Flenoy merely asked Detective
Killingsworth whether he could send for the lawyer if Flenoy wanted the
lawyer present.  See Davis, 512 U.S. at 461–62, 114 S. Ct.
at 2356 (explaining that equivocal statement regarding counsel does not require
police to halt interrogation or even to seek clarification).  Moreover, to the
extent that Flenoy did invoke his right to counsel, he waived that right by immediately
thereafter initiating communication with Detective Killingsworth about the
ongoing investigation.  See Baldree, 784 S.W.2d at 686.  As for Detective
Killingworth’s comment that “it doesn’t work that way really,” the context suggests
that he was likely attempting to explain that the defense attorney would simply
discontinue the interview, not that Flenoy could not invoke his right to
counsel.

          The
interview continued, and Detective Killingsworth explained the following to Flenoy:

          [Detective
Killingsworth]:   And I’ll, I’ll be honest with you, and I’ll explain to you
what I’m charging you with.  And what . . . happened.  And
what’s been told to me that you did.  But first of all, I would need you to sign,
or to put your initials by each one of these and sign it.  Uh, and by doing
that, all you’re doing is telling me you understand these, as I’ve read them to
you.  At that point, you have the right to tell me:  Yeah, I’ll
discuss this case with you up until a certain point.  You can answer some
questions.  You don’t have to answer all of the questions.

 

          [Flenoy]:    Okay.

 

          [Detective
Killingsworth]:   Or, or you could just tell me you’re done and don’t want to
even talk to me anymore without your attorney present.  It’s all up to you,
man.  [Emphasis added.]

Soon
thereafter, Flenoy told Detective Killingsworth, “I’m scared to talk with you
about it.  Because I don’t want to incriminate myself . . . .” 
At that point, Detective Killingsworth determined that he would terminate the
interview.  Flenoy, however, then questioned Detective Killingsworth about the
facts of the case, “Yeah, do you have an address or something?”  Detective
Killingsworth responded that he was not going to discuss the case with Flenoy
“because you don’t want to discuss it with me.”  Flenoy then said, “I’ll go
ahead.  I’ll discuss it with you.  I’ll discuss it with you, sir.  I’ll work
with you,” and he executed the Miranda form and confirmed that he was
waiving his rights.

          Thus,
although Detective Killingsworth construed Flenoy’s statements that he was
“scared” to talk about the case and that he did not want to “incriminate”
himself as an invocation of his right to counsel, Flenoy immediately initiated
communication with Detective Killingsworth, questioning him about the facts of
the case (whether the police had an address), and Flenoy agreed to waive his
rights.  Because Flenoy, not Detective Killingsworth, initiated the
communication, the waiver is valid.  See Holloway v. State, 780 S.W.2d
787, 789–90 (Tex. Crim. App. 1989).  Accordingly, we hold that the trial court
did not err by admitting Flenoy’s recorded oral statement, and we overrule his first
point.

IV.  Voluntariness Instruction

          In
his second point, Flenoy argues that the trial court reversibly erred by
failing to include a jury instruction pursuant to section 6 of article 38.22
of the code of criminal procedure regarding the voluntariness of his recorded
statement.

          In
our review of a jury charge, we first determine whether error occurred; if
error did not occur, our analysis ends.  See Abdnor v. State, 871 S.W.2d
726, 731–32 (Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d
23, 25–26 (Tex. Crim. App. 2009).

          The
trial court “has an absolute sua sponte duty to prepare a jury
charge that accurately sets out the law applicable to the specific offense
charged.”  Delgado v. State, 235 S.W.3d 244, 249 (Tex. Crim. App.
2007).  When a statute, such as article 38.22, requires an instruction
under certain circumstances, that instruction is “law applicable to the case,”
and the trial court must instruct the jury on what is required under the
statute.  Oursbourn v. State, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008).

          The
court of criminal appeals has explained that article 38.22, section 6
contemplates the following sequence of events:

(1) a party
notifies the trial judge that there is an issue about the voluntariness of the
confession (or the trial judge raises the issue on his own); (2) the trial
judge holds a hearing outside the presence of the jury; (3) the trial
judge decides whether the confession was voluntary; (4) if the trial judge
decides that the confession was voluntary, it will be admitted, and a party may
offer evidence before the jury suggesting that the confession was not in fact
voluntary; (5) if such evidence is offered before the jury, the
trial judge shall give the jury a voluntariness instruction.

Id. at 175
(footnote omitted); see Tex. Code Crim. Proc. Ann. art. 38.22, § 6
(West 2005).

          Here,
Flenoy notified the trial court about his challenges to the recorded statement,
and after the trial court held a hearing outside the jury’s presence, it signed
an order finding that Flenoy had knowingly and voluntarily waived his rights as
set out in the warnings.  Flenoy then had the opportunity to offer evidence
before the jury to show that he did not give his statement voluntarily.  See
Oursbourn, 259 S.W.3d at 175.  Flenoy, however, neither directs us to any
evidence, nor have we located any, in which he suggested before the jury that
his recorded statement was involuntary.  See id. at 180 (“Article 38.22,
§ 6 is ‘the law applicable’ to any case in which a ‘question’ is raised and
litigated as to the ‘general’ voluntariness of a statement of an accused.”
(emphasis added)).  Because Flenoy offered no such evidence, a reasonable jury
could not have concluded that the statement was involuntary, and the trial
court was therefore not required to give the jury an article 38.22,
section 6 instruction.  See id. at 181; see also Montoya
v. State, Nos. 02-08-00287-CR, 02-08-00288-CR, 02-08-00289-CR, 2010 WL
1633387, at *5–6 (Tex. App.—Fort Worth Apr. 22, 2010, pet. dism’d) (mem.
op., not designated for publication) (holding same); Boyd v. State, No.
09-10-00062-CR, 2011 WL 915091, at *2–3 (Tex. App.—Beaumont Mar. 16, 2011,
no pet) (mem. op., not designated for publication) (same).  We overrule
Flenoy’s second point.

V.  Conclusion

          Having
overruled both of Flenoy’s points, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 5, 2012









[1]See Tex. R. App. P. 47.4.





[2]Flenoy timely objected
during trial to the admission of the recorded oral statement.  See Warren v.
State, No. 02-11-00052-CR, 2012 WL 858629, at *1 n.5 (Tex. App.—Fort
Worth Mar. 15, 2012, no pet.) (mem. op., not designated for publication)
(applying motion to suppress standard of review to argument that trial court
abused its discretion by admitting illegally seized evidence).