

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00270-CR

STEVEN ALEXANDER FLENOY                                   APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Steven Alexander Flenoy of robbery, and the trial court found two enhancement paragraphs true and sentenced him to fifty years' confinement. In two points, Flenoy challenges the admission of his recorded oral statement and argues that the trial court erred in its charge to the jury. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Jennifer Pruitt worked as a taxicab driver in Wichita Falls. Just before 11:00 p.m. on October 8, 2009, she was dispatched to the Budget Inn to pick up a customer from room number 3. When Pruitt arrived at the hotel and honked her horn, Flenoy ran from behind the hotel, jumped into the front seat of Pruitt's vehicle, and told her to take him to 37th and Jacksboro. Pruitt headed in that direction but also asked Flenoy to show her that he had money to pay for the cab ride. Flenoy dug around in his pockets but never showed Pruitt any money.

Upon arriving at 37th and Jacksboro, Pruitt told Flenoy that he owed her $8 for the ride, and Flenoy stepped out of the vehicle, took off his jacket, and began "messing around" in his pockets. Pruitt noticed Flenoy take something out of his pocket and put it behind his back. Flenoy told Pruitt that he wanted to run over to a nearby house to grab someone, and he asked Pruitt if she could drive them to another location. When Pruitt said no and demanded the $8, Flenoy jumped into the vehicle's back seat and tried to put Pruitt in a headlock. Pruitt managed to open her door and stick her head out, but when she tried to drive off, Flenoy made his way to the front seat, pulled out a gun, put the gun against Pruitt's ribs, and told her to give him "all the company money." Pruitt said that she did not have any money, and Flenoy responded that he was going to kill her if she did not give him the money. Pruitt heard a "click," which she thought was the sound of the gun jamming, and then the two started fighting—Pruitt elbowed Flenoy's face, but Flenoy punched Pruitt's face, pulled her hair, and scratched at

2

her back. At some point during the confrontation, Pruitt "smashed" on the gas pedal, and Felony grabbed the wheel, causing the vehicle to drive between a fence and a mailbox. During the struggle, Pruitt managed to kick Flenoy in the chest and out of the vehicle, but he jumped back inside. Pruitt kicked Flenoy out of the vehicle a second time and was able to drive away and call for help. Detective Allen Killingsworth later interviewed Flenoy, who made incriminating statements.

### III. INVOCATION AND WAIVER OF RIGHT TO COUNSEL

In his first point, Flenoy argues that the trial court abused its discretion by admitting in evidence his recorded oral statement. He contends that the statement was involuntary and taken in violation of his Fifth Amendment and article I, section 10 rights to counsel because the investigator continued questioning Flenoy about the offense after he invoked his right to counsel and because he did not waive his right to counsel by initiating further communications with the investigator.

We use the motion to suppress standard of review.[2] We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total

---

[2]Flenoy timely objected during trial to the admission of the recorded oral statement. *See Warren v. State*, No. 02-11-00052-CR, 2012 WL 858629, at *1 n.5 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op., not designated for publication) (applying motion to suppress standard of review to argument that trial court abused its discretion by admitting illegally seized evidence).

deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When a suspect asks for a lawyer, interrogation must cease until counsel has been provided or the suspect initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1885 (1981). But not every mention of a lawyer will invoke the right to the presence of counsel during questioning; the suspect must unambiguously request counsel. *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355 (1994); *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). The test is objective: did the suspect sufficiently articulate clearly his desire to have counsel present such that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney? *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 122 (2011). When reviewing alleged invocations of the right to counsel, we look to the totality of the circumstances surrounding the interrogation, as well as the alleged invocation, to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995).

When an accused has invoked his right to counsel but waives that right by initiating communication with police or law enforcement officials, "the law requires . . . that the contact initiated by the accused must be of a type that evinces a willingness and desire for a generalized discussion about the ongoing investigation." *Baldree v. State*, 784 S.W.2d 676, 686 (Tex. Crim. App. 1989), *cert. denied*, 495 U.S. 940 (1990). A valid waiver of the right to counsel cannot be established by showing that the accused merely responded to further police-initiated custodial interrogation. *State v. Consaul*, 960 S.W.2d 680, 688 (Tex. App.—El Paso 1997, pet. dism'd), *cert. denied*, 526 U.S. 1160 (1999).

Flenoy mentions a lawyer several times during his recorded statement. The first such exchange is as follows:

> [Flenoy]: I uh I have a lawyer. Could I have him present? Uh Mr. Brennon Brady.

> [Detective Killingsworth]: Okay.

> [Flenoy]: Um because I was, you're saying aggravated robbery, and I have no idea what this is.

Flenoy's statement merely (1) declared that he had a lawyer and (2) questioned whether it was permissible for him to have his lawyer present during questioning. Flenoy's statement was not a clear and unambiguous request for counsel requiring Detective Killingsworth's questioning to terminate but, instead, a query about the interrogation process. *See Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that appellant did not invoke his right to counsel by asking, "Can I have him present now?"); *Halbrook*

5

*v. State*, 31 S.W.3d 301, 302, 304 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding that appellant had not invoked his right to counsel when he asked, "Do I get an opportunity to have my attorney present?"); *see also Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that appellant did not clearly and unambiguously invoke right to counsel by questioning, "Can I wait until my lawyer gets here?").

The next exchange in which Flenoy mentions a lawyer follows Detective Killingsworth's statement that Flenoy may have his lawyer present if he so desires:

> [Flenoy]: Basically, if I wanted my lawyer present, then could you just go send for my lawyer?
>
> [Detective Killingsworth]: Well, you know, it . . . doesn't work that way really.
>
> [Flenoy]: Oh.
>
> [Detective Killingsworth]: I mean it's not like we probably couldn't uh . . . ."
>
> [Flenoy]: So I'm being charged . . . with aggravated robbery?

Flenoy's statement is not a clear and unambiguous request for counsel requiring Detective Killingsworth's questioning to terminate because Flenoy merely asked Detective Killingsworth whether he could send for the lawyer *if* Flenoy wanted the lawyer present. *See Davis*, 512 U.S. at 461–62, 114 S. Ct. at 2356 (explaining that equivocal statement regarding counsel does not require police to halt interrogation or even to seek clarification). Moreover, to the extent that Flenoy

6

did invoke his right to counsel, he waived that right by immediately thereafter initiating communication with Detective Killingsworth about the ongoing investigation. *See Baldree*, 784 S.W.2d at 686. As for Detective Killingworth's comment that "it doesn't work that way really," the context suggests that he was likely attempting to explain that the defense attorney would simply discontinue the interview, not that Flenoy could not invoke his right to counsel.

The interview continued, and Detective Killingsworth explained the following to Flenoy:

> [Detective Killingsworth]: And I'll, I'll be honest with you, and I'll explain to you what I'm charging you with. And what . . . happened. And what's been told to me that you did. *But first of all, I would need you to sign, or to put your initials by each one of these and sign it. Uh, and by doing that, all you're doing is telling me you understand these, as I've read them to you.* At that point, you have the right to tell me: Yeah, I'll discuss this case with you up until a certain point. You can answer some questions. You don't have to answer all of the questions.
>
> [Flenoy]: Okay.
>
> [Detective Killingsworth]: Or, or you could just tell me you're done and don't want to even talk to me anymore without your attorney present. It's all up to you, man. [Emphasis added.]

Soon thereafter, Flenoy told Detective Killingsworth, "I'm scared to talk with you about it. Because I don't want to incriminate myself . . . ." At that point, Detective Killingsworth determined that he would terminate the interview. Flenoy, however, then questioned Detective Killingsworth about the facts of the case, "Yeah, do you have an address or something?" Detective Killingsworth responded that he was not going to discuss the case with Flenoy "because you don't want to

discuss it with me." Flenoy then said, "I'll go ahead. I'll discuss it with you. I'll discuss it with you, sir. I'll work with you," and he executed the *Miranda* form and confirmed that he was waiving his rights.

Thus, although Detective Killingsworth construed Flenoy's statements that he was "scared" to talk about the case and that he did not want to "incriminate" himself as an invocation of his right to counsel, Flenoy immediately initiated communication with Detective Killingsworth, questioning him about the facts of the case (whether the police had an address), and Flenoy agreed to waive his rights. Because Flenoy, not Detective Killingsworth, initiated the communication, the waiver is valid. *See Holloway v. State*, 780 S.W.2d 787, 789–90 (Tex. Crim. App. 1989). Accordingly, we hold that the trial court did not err by admitting Flenoy's recorded oral statement, and we overrule his first point.

### IV. VOLUNTARINESS INSTRUCTION

In his second point, Flenoy argues that the trial court reversibly erred by failing to include a jury instruction pursuant to section 6 of article 38.22 of the code of criminal procedure regarding the voluntariness of his recorded statement.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

The trial court "has an absolute *sua sponte* duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged."

8

*Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). When a statute, such as article 38.22, requires an instruction under certain circumstances, that instruction is "law applicable to the case," and the trial court must instruct the jury on what is required under the statute. *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008).

The court of criminal appeals has explained that article 38.22, section 6 contemplates the following sequence of events:

> (1) a party notifies the trial judge that there is an issue about the voluntariness of the confession (or the trial judge raises the issue on his own); (2) the trial judge holds a hearing outside the presence of the jury; (3) the trial judge decides whether the confession was voluntary; (4) if the trial judge decides that the confession was voluntary, it will be admitted, *and a party may offer evidence before the jury suggesting that the confession was not in fact voluntary*; (5) *if such evidence is offered before the jury*, the trial judge shall give the jury a voluntariness instruction.

*Id.* at 175 (footnote omitted); *see* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005).

Here, Flenoy notified the trial court about his challenges to the recorded statement, and after the trial court held a hearing outside the jury's presence, it signed an order finding that Flenoy had knowingly and voluntarily waived his rights as set out in the warnings. Flenoy then had the opportunity to offer evidence before the jury to show that he did not give his statement voluntarily. *See Oursbourn*, 259 S.W.3d at 175. Flenoy, however, neither directs us to any evidence, nor have we located any, in which he suggested before the jury that his recorded statement was involuntary. *See id.* at 180 ("Article 38.22, § 6 is 'the

law applicable' to any case in which a 'question' is raised *and litigated* as to the 'general' voluntariness of a statement of an accused." (emphasis added)). Because Flenoy offered no such evidence, a reasonable jury could not have concluded that the statement was involuntary, and the trial court was therefore not required to give the jury an article 38.22, section 6 instruction. *See id.* at 181; *see also Montoya v. State*, Nos. 02-08-00287-CR, 02-08-00288-CR, 02-08-00289-CR, 2010 WL 1633387, at \*5–6 (Tex. App.—Fort Worth Apr. 22, 2010, pet. dism'd) (mem. op., not designated for publication) (holding same); *Boyd v. State*, No. 09-10-00062-CR, 2011 WL 915091, at \*2–3 (Tex. App.—Beaumont Mar. 16, 2011, no pet) (mem. op., not designated for publication) (same). We overrule Flenoy's second point.

## V. CONCLUSION

Having overruled both of Flenoy's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 5, 2012

10