**Robert Wiley ANDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44763.**

Court of Criminal Appeals of Texas.

April 26, 1972.

James H. Kreimeyer, James E. Hammond, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., David R. Rosada and Stewart L. Victorson, Asst. Dist. Attys., El Paso, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at twenty years.

The record shows that sometime after 10:30 p. m. on June 28, 1970, the appellant stabbed and killed Ronald Allen, the deceased. Appellant and deceased along with several others were at the time cellmates in the El Paso County Jail.

Complaint is made of the trial court's refusal to grant his motion for an instructed verdict of not guilty because of an alleged material variance between the allegation in the indictment that appellant stabbed the deceased "with an instrument to the grand jurors unknown" and the State's evidence. Appellant contends the grand jury at the time they indicted him either knew or by the exercise of reasonable diligence could have discovered that the instrument used was a sharpened spoon.

At the trial, Emilio Posada and Lee Van testified that they saw physical contact between the appellant and the deceased but neither saw a weapon. Three witnesses testified that appellant either told them or they overheard him say he had used a spoon to kill the deceased. The appellant gave a statement that he had a sharpened spoon in his left hand and swung at the deceased with his right arm and that the deceased grabbed appellant's left arm and he pulled it back. The statement also recited that appellant saw blood, thought the deceased was cut in the stomach, became frightened and flushed the spoon down the toilet. The commode in the jail tank was removed and no spoon was found. There was testimony that one of the prisoners had a pair of scissors in the cell but none was found in a subsequent search. Many prisoners possessed sharpened spoons and five such spoons were found in a subsequent search of the cell. These sharpened spoons as well as five dull ones also found in the search were processed for fingerprints. Appellant's fingerprints were found on none. Blood was not found on any of the spoons. There was testimony that the property of each prisoner was accessible to everyone else. The doctor who performed the autopsy testified that the wound on the deceased was caused by something that had a sharp edge.

No one saw the instrument used to kill the deceased. No instrument was found which could be connected positively to the killing, and the doctor could not be definite about the kind of instrument used.

After the appellant presented his motion for an instructed verdict of not guilty, the court allowed the State to reopen to prove that the grand jury made diligent inquiry to ascertain the means or character of the instrument used in the commission of the alleged offense. Such proof was apparently required. See Clark v. State, 151 Tex.Cr.R. 383, 208 S.W.2d 637, 638; 4 Branch's Ann.P.C.2d, Section 2261, page 622.

Michael R. Gibson, the assistant district attorney who presented the case to the grand jury, testified that he had read all of some nine to eleven affidavits to the grand jury either in their entirety or portions from them. Some of the statements referred to a knife and a spoon. The grand jury asked him to furnish the instrument and he told them it had not been recovered. He advised them of the search of the cell, of the fingerprint examinations and of the inspection of the sewage system. He testified that the grand jury used diligence to ascertain what instrument had been used.

William B. White, foreman of the grand jury which indicted the appellant, testified that the evidence (including appellant's written statement) about an instrument "just wasn't too clear" and no instrument was brought before them. He further testified that he did not know what else the grand jury could have done in attempting to determine what instrument was used.

The testimony of Gibson and White was before the petit jury and the trial court charged them:

" . . . Before the Defendant can be convicted as charged in the indictment you must believe that the grand jurors did not know, or by the exercise of rea-

sonable diligence could not have discovered the exact instrument used by the Defendant, if he did so use. Unless you so believe, or if you have a reasonable doubt thereof, you must acquit the Defendant."

■ The evidence was sufficient to support the jury's apparent determination that the grand jury did not know or with the exercise of reasonable diligence could not have discovered the exact instrument used in the commission of the offense.[1]

Next, appellant complains that the trial court erred in admitting testimony as to oral statements made by him while confined in jail. His complaint is that this violates Article 38.22, Vernon's Ann.C.C.P. Appellant admits that "many of them would, perhaps, be justified as res gestae of the offense." He points out in his brief two instances of oral statements made by him and admitted into evidence over his objection.

Edward Mitchell, one of the cellmates with appellant and deceased, testified that he went to sleep around 10:30 p. m. on the day in question. Sometime later he awakened to see another cellmate, Joseph Gilmore, carrying the deceased to a lighted part of the cell. Another cellmate, Milton McCormick, started giving the deceased artificial respiration, said the deceased was hurt and to call the guard. Mitchell and Henry Marques began beating on the wall to attract the guards. In about thirty minutes a guard came to the window and was told a man was hurt. Some fifteen or twenty minutes later two guards and two trusties put the deceased on a cart and took him away. No jailers or members of the sheriff's department remained in the tank. Mitchell said the appellant was "very nervous and scared." At another point in his testimony he described the appellant as "excited and scared." No questions were asked of appellant by anyone until after the appellant stated:

"What shall I say? What if he dies? Will I be charged with murder? Shall I say it was an accident? I'll admit that I did the stabbing if you all will you say you saw it as an accident?"

Appellant objected to the admission of this statement on voir dire outside the presence of the jury. The objection was overruled and the statement was admitted.

■ The present case is unusual in that the crime itself, as well as all acts and statements made in connection with it, took place while the appellant was in custody for another offense. The above statement was not made in the presence of any peace officers, was not the result of any interrogation by anyone, and was unrelated to the offense for which the appellant was in custody. If the statement objected to was spontaneous and res gestae of the offense, we would not need to determine whether Article 38.22, supra, applies. However, because of the unusual circumstances of the present case and because the statement shows some elements of planning, we consider the applicability of the statute a necessary determination.

■■ The inadmissibility of a confession made while in jail does not depend upon whether the offense confessed and the offense for which the accused is in jail are one and the same. See Neiderluck v. State, 21 Tex.App. 320, 17 S.W. 467. Article 38.22, supra, applies to statements relating to the offense for which the accused is in jail and to statements relating to a crime committed prior to custody. Where, however, statements are made regarding an offense then being committed or regarding an offense not yet committed they are not

---

1. In situations such as this, to avoid possible variance, an indictment could be presented alleging in the conjunctive "all possible means of doing the killing, including with an instrument to the Grand Jury unknown." Proof of one of the means would suffice. See Helmus v. State, Tex.Cr.App., 397 S.W.2d 437 (1965), and Burt v. State, 38 Tex.Cr.R. 397, 40 S.W. 1000.

made inadmissible by the statute. See Branch's Ann.P.C.2d, Section 83, page 82, and cases there cited.

The present case related to an offense which, while not then being committed as the statement was made, was committed while appellant was in custody for another offense but some 45 or 50 minutes prior to the statement. In Mathis v. State, 39 Tex.Cr.R. 549, 47 S.W. 464, a statement relating to an offense which had not yet been committed was held admissible although made without the then required warnings. In holding this statement to be admissible under old Article 790, Texas Code of Criminal Procedure (1895), the Court said:

"To illustrate: Suppose A., a prisoner, should assault B., a fellow prisoner, while in jail; would the acts and conduct of A., including his declarations in connection with the offense, be excluded, because no warning had been given under the statute? Certainly not." Id., 47 S.W. at 465.

In Mathis, the statement was dictum only and referred to a hypothetical situation. Further, Article 790, supra, made no distinction between written and oral confessions but only required warnings before a jail confession was admissible. The statute was amended in 1907 to exclude generally oral confessions not taken before an examining court. Article 810, Texas Code of Criminal Procedure (1907). The 1907 statute was kept as part of the 1925 revision in Article 727, Texas Code of Criminal Procedure (1925). The 1965 revision added stringent new conditions in Article 38.22, V.A.C.C.P. (1965), by requiring that the warnings set out in Article 15.17, V.A.C.C.P, be given prior to admitting a written confession. Subsequent to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Article 38.22 was again revised placing the warnings set forth in that case in the statute itself. Article 38.22, V.A.C.C.P. (1972 Supp.).

Whatever the differences between the statute at the time of the Mathis case and at present the apparent rationale of Mathis still applies, namely, where the offense is committed while the accused is in custody, the bare fact of custody is fortuitous to any statements made regarding that offense. We can conceive of no interest of the appellant which would be rightfully protected by holding the statute to apply to such statements. Nothing appears in the present case to make custody more than an irrelevant circumstance within which both the offense and the inculpatory statement occurred. We hold that Article 38.22, supra, was not intended by the Legislature to apply to such a situation and the statement was properly admitted by the trial court.

Robert Kittelson, another cellmate, testified about transactions in the jail over the objection that they were confessions. He testified that a day or two prior to the homicide the appellant went around grabbing people, including the deceased, by the rear and saying, "Give me booty or it's booty time." Such a statement could not be construed to be a confession. See McCormick & Ray, Texas Evidence, Section 1201 (1956). The statement introduced was made in connection with appellant's sexual advances upon the deceased and others and was admissible under Article 1257a, Vernon's Ann.P.C., which provides, in part:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. . . ."

Appellant also complains of the admission of testimony regarding other sex-

ual advances toward the deceased occurring as much as a week prior to the killing. His objection is that these, too, are inadmissible confessions. They were not confessions and were admissible under Article 1257a, supra.

No error is shown. The judgment is affirmed.