**Alester Demetrias DORSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–94–00943–CR.

Court of Appeals of Texas,
Dallas.

Dec. 20, 1996.

171

Jeffrey B. Keck, Dallas, for Appellant.

Karen J. Greene, Assistant District Attorney, Dallas, for Appellee.

Before LAGARDE, WRIGHT and WOLFE, JJ.

### OPINION

LAGARDE, Justice.

Alester Demetrias Dorsey appeals his conviction of burglary of a vehicle. After finding appellant guilty, the jury assessed his punishment, enhanced by two prior felony convictions, at life imprisonment. In three points of error, Dorsey contends that 1) the trial court erred in overruling his *Batson*[1] objection, 2) the trial court improperly admitted into evidence, over objection, his unrecorded custodial statement, and 3) the evidence was insufficient to show that he was guilty of the offense charged. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

On September 17, 1993, Purvis Maroney, an off-duty Dallas police officer, received a telephone call at approximately 2:30 a.m. in his apartment. In response to this call, Maroney looked out of the first-floor window of his bedroom onto the parking lot thirty to fifty feet away. He saw a light-brown or tan two-door General Motors car driving slowly through the parking lot with two males visible on the right side. One sat in front while the other leaned forward from the backseat as he looked out of the window. As the car turned into a cul-de-sac, Maroney noted a partial license plate number: 573.

Maroney telephoned Detective Paul Ellzey, an undercover officer on special assignment

1. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

investigating property crimes in the area, and alerted him to the fact that a suspicious vehicle was in the complex. In the process of getting dressed, Maroney returned to the window. He saw two black males with flashlights looking into the front passenger side of a maroon car. One man was tall and wore dark clothes; the other man was shorter and wore a multicolored jacket.

Maroney called Ellzey again to report that suspicious persons were looking into cars at the complex. Maroney returned to the window and saw the tall man leaning into the inside of the car. The man appeared to be doing something to the dashboard. The shorter man, identified by Maroney in court as Dorsey, stood next to the other man and looked around the parking lot. Maroney testified that the term for what Dorsey was doing is "good eye," which means that it was Dorsey's responsibility to notify the tall man if anyone was watching or arriving on the scene. When Maroney saw the tall man actually leaning into the car, he advised Ellzey that a burglary was in progress.

Maroney went outside and saw two males running, one a tall man, and the other wearing a multicolored jacket. The tan car earlier seen by Maroney drove up, and the two men jumped in. As the car left the complex, Maroney saw more of the license plate number: 573 SB. He notified Ellzey that the car was headed toward Leisure Street, and Ellzey confirmed that he had the car in sight. Maroney returned to the maroon car and noticed that broken glass covered the surrounding concrete area, the right front passenger window was broken, and wires hung from the dash where some object had been removed. After Maroney advised Ellzey that a burglary of the motor vehicle had indeed occurred, he discovered that the owner of the car was Kimberly Davis.

Ellzey, meanwhile, saw a yellow,[2] two-door Oldsmobile, license plate number 573 SB, with three black males inside, one wearing a multicolored jacket, drive out of the complex.

He followed the car until it stopped at a gas station. The front passenger, approximately six feet, five inches tall, stepped out of the car carrying a stereo in his hands. The tall man put the stereo into the trunk and returned to the front seat. When Maroney radioed verification that an offense had occurred, Ellzey arranged for two uniformed officers, Brent Duffield and Curtis Steger, in a marked squad car to stop the vehicle. Ellzey observed the stop through binoculars and then went to the offense location to personally confirm that the car had been burglarized. He told Duffield and Steger to place the suspects under arrest, inventory the vehicle, and bring the stereo to him at the complex.

When Duffield and Steger opened the trunk, they found flashlights and screwdrivers along with several radios, telephones, and radar detectors with wires hanging, thrown in a pile. Davis identified her stereo and radar detector, and the officers released them to her. The officers seized the other property and transported the arrestees to the police substation.

Ellzey advised Dorsey of his *Miranda*[3] rights, and Dorsey, wearing a blue-and-white nylon jacket, waived his rights and agreed to talk with Ellzey.[4] Dorsey refused to make a written statement, however, and no recording equipment was available. Dorsey told Ellzey that he stood by while Judge Richardson went inside the burglarized car. Dorsey told Ellzey, "The only thing I did was look for the cops to let him know if somebody was coming or watching." Then, Dorsey identified the other property found in the trunk, told Ellzey where it came from, and offered to take the officers to another car that he and Richardson had burglarized that night. Before they left, Dorsey described the make, color, and location of the second car. Duffield and Steger accompanied Dorsey, and they found the car that Dorsey described located across the street from Davis's car. Dorsey repeatedly stated that he did not

---

2. Ellzey remembered that Maroney said the car was yellow; Maroney, however, testified that he told Ellzey that the car was light brown or tan.

3. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Judge Richardson refused to waive his rights; the driver waived his rights but stated that he only drove the car and never entered any other cars.

break any windows and that his involvement was strictly as a lookout.

### SUFFICIENCY OF EVIDENCE

In his third point of error, Dorsey contends that the evidence was insufficient to show that he was guilty of the offense charged. The State argues that the evidence is sufficient to sustain Dorsey's conviction of burglary of a motor vehicle.

Dorsey contends that the charge does not permit him to be convicted as a party because neither the application paragraph nor the definitions in the jury charge told the jury that before Dorsey could be convicted of burglary as a party, the jury would have to conclude beyond a reasonable doubt that some other person actually committed the burglary. In support of this argument, Dorsey cites *Walker v. State,* 823 S.W.2d 302 (Tex.App.—Tyler), *aff'd per curiam,* 823 S.W.2d 247 (Tex.Crim.App.1991), *and cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992).

In *Walker,* the charge contained an abstract instruction on the law of parties but did not reference the law of parties in the application paragraph. *Id.* at 305, 306 n. 5. The court held that the charge did not require the jury to find beyond a reasonable doubt that someone other than the appellant committed the offense. *Id.* at 307–08. Therefore, the charge did not permit the appellant to be convicted as a party. *Id.* at 308. Because the evidence was insufficient to prove that the appellant individually committed the offense, the court ordered the appellant acquitted. *Id.* at 309.

■ In this case, the application paragraph stated:

> Now if you find from the evidence beyond a reasonable doubt that ... the defendant ... acting individually or as a party to the offense, if any, did knowingly or intentionally break into or enter a vehicle. . . .

The charge defined the law of parties as follows:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is crimi-

nally responsible as a party to an offense *if the offense is committed* by his own conduct, *by the conduct of another* for which he is criminally responsible, or both.

> A person is criminally responsible for *an offense committed by the conduct of another* if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

(Emphasis added.) The application paragraph clearly required the jury to find beyond a reasonable doubt that the offense was committed by the defendant acting individually or as a party. The definition of "party" clearly required that the offense be committed by a person for whose conduct the defendant is criminally responsible. Because the charge did instruct the jurors that before Dorsey could be convicted as a party they would have to conclude beyond a reasonable doubt that some other person actually committed the burglary, *Walker* does not apply, and Dorsey's argument lacks merit. We hold that the charge permitted the jury to find Dorsey guilty as a party.

■ Dorsey next contends that the evidence is insufficient to convict him as a party. Although the court of criminal appeals recently authorized appellate courts to review the factual as well as the legal sufficiency of evidence, Dorsey does not raise a factual sufficiency point; consequently, we will not address this issue. *See Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (appellate courts should conduct a factual sufficiency review *if such a point is raised on appeal* ).

■ When reviewing the legal sufficiency of the evidence, this Court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). In making this determination, the reviewing court considers all the evidence, including improperly admitted evidence. *Rodriguez v.*

*State,* 819 S.W.2d 871, 873 (Tex.Crim.App. 1991). The evidence is sufficient to support a conviction of guilt if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Livingston v. State,* 739 S.W.2d 311, 330 (Tex. Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

In a jury trial, we review the sufficiency of the evidence under the jury charge as given. *Jones v. State,* 815 S.W.2d 667, 668 (Tex.Crim.App.1991) (per curiam). When an indictment facially alleges a complete offense, we compare the evidence to the charging instrument as incorporated in the jury charge. *Fisher v. State,* 887 S.W.2d 49, 55 (Tex.Crim.App.1994). It is the jury charge that authorizes conviction. *See Jones,* 815 S.W.2d at 669–70. Furthermore, the trier of fact is the sole judge of the witnesses' credibility and the testimony's weight. *See Adelman v. State,* 828 S.W.2d 418, 421, 423 (Tex. Crim.App.1992); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The trier of fact may reconcile conflicts in the testimony and accept or reject any or all of the evidence presented by either side. *Adelman,* 828 S.W.2d at 421. A jury is entitled to accept the State's version of the facts and reject the defendant's version, or reject any of the witnesses' testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). The jury is responsible for resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Dumas v. State,* 812 S.W.2d 611, 615 (Tex.App.—Dallas 1991, pet. ref'd).

Dorsey asserts that the evidence is insufficient because the evidence does not show that he was the person standing by Davis's car or that he was acting as a lookout. Ellzey testified that Dorsey told him that he looked for police officers while Richardson stole Davis's stereo. Maroney testified that Dorsey stood next to Richardson while Richardson entered Davis's car, and that Dorsey looked around the parking lot while Richardson entered Davis's car. Dorsey also contends that the evidence does not

show that Maroney was able to identify Dorsey as the lookout. However, at trial, Maroney identified Dorsey as the lookout. This evidence shows that Dorsey was the person standing next to Richardson and that Dorsey acted as a lookout. We hold that the evidence is legally sufficient to support Dorsey's conviction. We overrule Dorsey's third point of error.

### BATSON

In his first point of error, Dorsey contends that the trial court erred in overruling his objection to the State's strikes of prospective jurors in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State asserts that the trial court correctly denied Dorsey's claim under *Batson.*

To invoke the protection of *Batson,* a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant establishes a prima facie case of discrimination by showing facts and any relevant circumstances that raise an inference that the State used peremptory strikes to exclude prospective jurors on account of their race. *See Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 1369, 113 L.Ed.2d 411 (1991); *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722; *Mead v. State,* 819 S.W.2d 869, 870 (Tex. Crim.App.1991); *Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Crim.App.1987). When a defendant establishes a prima facie case, the burden of production shifts to the State to come forward with a racially neutral explanation. *Purkett v. Elem,* 514 U.S. 765, ——, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995) (per curiam); *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton,* 724 S.W.2d at 65. The explanation must be racially neutral; it need not be persuasive or even plausible. *Purkett,* 514 U.S. at ——, 115 S.Ct. at 1771. If a racially neutral explanation is tendered, the defendant may offer evidence showing that the explanation is a sham or pretext for discrimination. The trial court must then decide whether the defendant has proved racial discrimination. *Id.* at ——–——, 115 S.Ct. at 1770–71.

On appeal, the trial court's decision on the issue of discriminatory intent is given great deference because the decision depends on assessing the credibility and the content of the State's explanation and all other relevant facts and circumstances. *Alexander v. State*, 866 S.W.2d 1, 8 (Tex.Crim.App.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994). The reviewing court will not disturb the trial court's decision unless it is clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991); *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Crim.App. 1989) (op. on reh'g). In other words, a reviewing court must not reverse a trial court's *Batson* decision unless the reviewing court is left with a firm conviction that a mistake has been committed. *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Whitsey*, 796 S.W.2d at 721. If the record supports the findings of the trial judge, they will not be disturbed on appeal. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex.Crim.App.1988) (op. following abatement); *Reich–Bacot v. State*, 789 S.W.2d 401, 404 (Tex.App.—Dallas 1990), *pet. dism'd per curiam*, 815 S.W.2d 582 (Tex.Crim.App. 1991).

### a. Prospective Juror Erma Alexander

Dorsey challenged the State's strike of prospective juror number ten, Erma Alexander, a black woman. The record reflects the following exchange:

[DEFENSE COUNSEL]: [Y]ou're saying the reason you struck Juror ... 10, was because she was asleep; is that correct?

[PROSECUTOR]: Juror 10, specifically, was fast asleep the entire time, from beginning to end.

[DEFENSE COUNSEL]: Okay. Judge, I would ask—or I would offer by way of testimony at this time, Judge, Juror 10 was not asleep the entire time of the trial—trial. There were many times she seemed to be extremely attentive.

THE COURT: Let the record reflect [defense counsel] is having a hard time keeping a straight face.

Striking a potential juror for sleeping or inattentiveness is racially neutral. *Ivatury v. State*, 792 S.W.2d 845, 848 (Tex.App.—Dallas 1990, pet. ref'd). The judge had testimony that Alexander was asleep and also had testimony she was not asleep. The judge watched voir dire and was in a position to know who spoke the truth. In this regard, we note the trial court made a remark about defense counsel being unable to keep a straight face. Under these facts, the trial court's decision to uphold the State's strike of Alexander was not clearly erroneous.

### b. Prospective Juror Felonese Harp

Dorsey challenged the State's strike of prospective juror Felonese Harp, a black woman. Counsel for the State pointed out that he struck Harp because she had a family member who had served time in the penitentiary. Counsel for Dorsey cross-examined the prosecutor concerning the State's failure to strike jurors numbers two, six, eighteen, and thirty-four for the same reason. The prosecutor responded that those jurors gave no indication that their relatives served any penitentiary time, noting also that he struck juror number twenty, a white woman, because she had a family member who had served time in the penitentiary. The use of peremptory strikes on prospective jurors who have relatives who have been convicted or charged with a criminal offense is legitimate and racially neutral. *See, e.g., Shavers v. State*, 881 S.W.2d 67, 76 (Tex.App.—Dallas 1994, no pet.). We conclude that the trial court's determination that the State's strike of Harp was racially neutral was not clearly erroneous.

### c. Prospective Juror Diane Grant

Dorsey asserts that the State engaged in racially disparate treatment of similarly situated prospective jurors by striking Diane Grant, who was black, but not striking Hubbell, who was white. Grant stated that she had relatives who served time in the penitentiary; Hubbell did not. The court noted, "I understood the reason was given wasn't that [their relatives], quote, 'been in trouble,' but that their trouble had been such as to cause them to be confined in the peni-

tentiary." Again, the use of peremptory strikes on prospective jurors whose relatives have been convicted or charged with a criminal offense is legitimate and racially neutral. *See, e.g., Shavers,* 881 S.W.2d at 76. We conclude that the trial court's determination that the State's strike of Grant was racially neutral was not clearly erroneous.

The record shows that the State consistently struck prospective jurors who were asleep or who had relatives who had served time in the penitentiary. When the burden shifted back to Dorsey, he did not rebut the State's explanations for the strikes. The record supports the trial court's finding that the State's strikes were legitimate and racially neutral. We overrule Dorsey's first point of error.

### UNRECORDED CUSTODIAL STATEMENT

In his second point of error, Dorsey contends that the trial court improperly admitted into evidence, over objection, his unrecorded custodial statement because the statement did not show that Dorsey was guilty of the offense for which he was charged. The State asserts that the trial court properly admitted Dorsey's oral statement into evidence because the statement contained assertions of facts that were found to be true and conduced to establish Dorsey's guilt.

■ The admissibility of oral statements by an accused made during custodial interrogation is governed by article 38.22 of the code of criminal procedure. *See* Tex. Code Crim.Proc.Ann. art. 38.22 (Vernon 1989). Section 3(a) of article 38.22 forbids the admission in a criminal proceeding of an accused's unrecorded oral statement made as a result of custodial interrogation. Tex.Code Crim.Proc.Ann. art. 38.22, § 3(a) (Vernon 1989). Section 3(a), however, does not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed. Tex.Code Crim.Proc.Ann. art. 38.22, § 3(c) (Vernon 1989). When a defendant's in-custo-

dy oral statement contains facts or circumstances which are found to be true and which conduce to establish his guilt, the statute permits introduction of the statement at trial. *McGilvery v. State,* 533 S.W.2d 24, 26 (Tex. Crim.App.1976). The facts or circumstances found to be true support the truth of the facts asserted by the defendant and conduce to establish his guilt. *See Briddle v. State,* 742 S.W.2d 379, 388 (Tex.Crim.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). These requirements establish the reliability of the confession, which is the concern of the statute involved. *Id.*

■ "Found to be true" means that "facts about which the police were unaware at the time of the confession are later, after the confession, found to be true." *Romero v. State,* 800 S.W.2d 539, 544–45 (Tex.Crim.App. 1990) (quoted in *Gunter v. State,* 858 S.W.2d 430, 448 (Tex.Crim.App.), *cert. denied,* 510 U.S. 921, 114 S.Ct. 318, 126 L.Ed.2d 265 (1993); *Almanza v. State,* 839 S.W.2d 817, 820 (Tex.Crim.App.1992)). Thus, subsequent corroboration of facts in an oral statement that were previously unknown will make an oral statement admissible. *Gunter,* 858 S.W.2d at 448; *Port v. State,* 791 S.W.2d 103, 107 (Tex.Crim.App.1990). However, the timing of the oral statement, alone, does not determine its admissibility. *Almanza,* 839 S.W.2d at 821. Rather, the combination of the oral statement and the subsequent discovery of previously unknown evidence provides the reliability necessary to invoke the limited exception to article 38.22. *Id.*

■ "Found to be true" has a second facet as well. When an oral confession of the accused is offered into evidence pursuant to article 38.22, section 3(c), if *any one* of the assertions of facts or circumstances of the confession is found to be true and conduces to establish the accused's guilt, then the oral confession is admissible in its entirety. *Baldree v. State,* 784 S.W.2d 676, 684 (Tex.Crim. App.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990); *Marini v. State,* 593 S.W.2d 709, 713 (Tex.Crim.App. [Panel Op.] 1980); *Hayes v. State,* 502 S.W.2d 158, 159 (Tex.Crim.App.1973). It is not necessary that *all* of the accused's oral

statements be found to be true and conduce to establish his guilt; the oral confession is admissible in its entirety if only one of the assertions within the oral confession is found to be true and conduces to establish his guilt. *Gunter*, 858 S.W.2d at 449; *Port*, 791 S.W.2d at 107; *Baldree*, 784 S.W.2d at 684; *Marini*, 593 S.W.2d at 713. The statute requires some statement contained in the confession to be found to be true and conduce to establish guilt; it does not require that the confession in each of its parts meets that test. *Marini*, 593 S.W.2d at 713.

The example given in article 38.22, section 3(c) of "the finding of secreted or stolen property or the instrument with which he states the offense was committed" is illustrative only and not a limitation on the statements that may be found to be true and conduce to establish guilt. *Gunter*, 858 S.W.2d at 448; *Briddle*, 742 S.W.2d at 388. Although some case law indicates that the oral confession or statement must lead to the recovery of items or information before the oral confession or statement is admissible, the statute plainly requires only that the statement assert facts or circumstances that are found to be true and which conduce to establish the guilt of the accused. *Gunter*, 858 S.W.2d at 448; *Port*, 791 S.W.2d at 106. Oral statements made by an accused need not lead to or result in the discovery of incriminating evidence as long as the requirements of the statute are met. *Gunter*, 858 S.W.2d at 448; *Port*, 791 S.W.2d at 106.

Finally, article 38.22 applies to statements relating to the offense for which the accused is in custody *and* to statements relating to another crime committed prior to custody. *Anderson v. State*, 479 S.W.2d 57, 60 (Tex.Crim.App.1972); *see Neiderluck v. State*, 21 Tex.App. 320, 17 S.W. 467, 467 (1886) (defendant made statement regarding

crime of theft while in custody on charge of vagrancy).[5] The admissibility of a confession made while in custody does not depend upon whether the confessed offense and the offense for which the accused is in custody are one and the same. *Anderson*, 479 S.W.2d at 60.

Dorsey's statement was oral and not recorded. Thus, to be admissible, the statement must comply with article 38.22, section 3(c). In his statement, Dorsey confessed to being the lookout for the charged burglary and told Officer Ellzey about a second burglarized car. Dorsey described the type and color of the second car, its location, its broken right front window, and the missing telephone. Each of these details showed similarities to the methods used in the charged offense. Dorsey led Officers Duffield and Steger to the second car, which confirmed the facts in Dorsey's statement in every detail. Officer Ellzey testified that he would not have known this evidence was in that area if Dorsey had not directed him there. Dorsey's oral statement contained assertions of fact that were found to be true and conduced to establish Dorsey's guilt for the offense charged. Dorsey's oral statement, in its entirety, was properly admitted because parts were found to be true. Most importantly, the admissibility of Dorsey's confession does not depend on whether Dorsey confessed to the burglary of the first car (for which he was in custody and subsequently charged) or the second car (for which he was not). *Anderson*, 479 S.W.2d at 60. The entire confession, regardless of its subject, was admissible.

Even assuming the trial court erred in admitting the unrecorded oral statement, such trial error is subject to a harmless error analysis. *See Dansby v. State*, 931 S.W.2d 297, 299 (Tex.Crim.App.1996). Under the

---

**5.** The statute in effect in 1886 regarding oral statements was virtually identical to TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3(c) (Vernon 1989), stating:

The confession shall not be used if at the time it was made the defendant was in jail, or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused, taken before an examining court, in

accordance with law, or be made voluntarily after having been first cautioned that it may be used against him, or unless, in connection with such confession, he make a statement of facts or of circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property or instrument with which he states the offense was committed.

TEX.CODE CRIM.PROC. art. 750 (Belo 1879).

facts of this case, we conclude any error would have been harmless.

This Court need not reverse a case due to trial error if we find "beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX.R.APP.P. 81(b)(2). If substantively identical evidence of which appellant does not complain is so overwhelming that the alleged error made no such contribution to either conviction or punishment, then the alleged error was harmless. *Hicks v. State,* 860 S.W.2d 419, 430 (Tex.Crim.App.), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994); *Gaines v. State* 789 S.W.2d 926, 930–31 (Tex.App.—Dallas 1990, no pet.).

The impact of the error cannot be properly evaluated without examining its interaction with the other evidence. *Harris v. State,* 790 S.W.2d 568, 586 (Tex.Crim.App. 1989). The Court should isolate the error and its effects and determine whether a rational trier of fact might have reached a different result on the verdict and punishment if the error and its effects had not resulted. *Id.* at 588. In determining whether an error is harmless, this Court should track the impact, if any, of the error on the jury. *Id.* at 587. This Court should examine the source of the error, the nature of the error, the emphasis placed on the error by the State, its probable collateral implications, how much weight a juror would probably place on the error, and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* Specifically, this Court should be concerned with the integrity of the trial process. *Id.* Furthermore, it is the error's effect and not the existence of overwhelming evidence of guilt or the lack thereof that dictates the Court's judgment. *Anderson v. State,* 817 S.W.2d 69, 73 (Tex. Crim.App.1991). Overwhelming evidence of guilt is, however, a variable to be calculated. *Orona v. State,* 791 S.W.2d 125, 130 (Tex. Crim.App.1990).

The impact on the jury of this oral statement was probably minimal. Three Dallas police officers, each with many years' experience, gave consistent, incriminating, eyewitness testimony describing Dorsey committing the burglary for which he was charged. This testimony was consistent with every detail of Dorsey's confession concerning the charged burglary. Dorsey presented no witnesses. The State did not emphasize the confession. Thus, the evidence of which Dorsey does not complain is so overwhelming that the admission of the oral confession probably made no contribution to Dorsey's conviction. We overrule Dorsey's second point of error.

We affirm the trial court's judgment.