Peters v









 

NO. 12-09-00116-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

NANCY MCKENNA,                                                §                      APPEAL
FROM THE 87TH

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT OF

 

W & W SERVICES, INC.,

APPELLEE                                                   §                      ANDERSON COUNTY, TEXAS

                                                                                                                                                           


            OPINION

            Nancy McKenna appeals from a take nothing judgment in her suit for gender
discrimination against W & W Services, Inc.  In her sole issue, McKenna
claims that the trial court erred in denying her Batson challenge. 
We affirm.

 

Background

            McKenna
applied for a job as a truck driver with W & W Services.  W & W
Services did not hire McKenna, and McKenna believed that her gender was a
motivating factor in that decision.  Thus, McKenna filed suit against W & W
Services for gender discrimination.

            At the
trial of the case, W & W Services used its six peremptory challenges to
strike six females from the venire.  McKenna believed that gender was a factor
in this decision as well, and raised a Batson[1]  challenge. 
The trial court conducted a hearing at which McKenna’s attorney asked the
attorney for W & W Services to state the reasons for each of the six
strikes.  Counsel complied, and McKenna presented nothing further in support of
her allegation that W & W Services struck the potential jurors because of
their gender.  The trial court then took judicial notice that 1) seventeen
females and seven males were within the “strike zone” for the jury, 2) McKenna
struck three females and three males, 3) W & W Services struck six females
and no males, and 4) the ultimate makeup of the jury was eight females and four
males.  Ultimately, the trial court found the strikes to be gender neutral, and
denied McKenna’s Batson challenge.

The
case proceeded to trial, and the jury found that gender was not a motivating
factor in W & W Services’ decision not to hire McKenna.  The trial
court rendered judgment in accordance with the jury’s verdict.  This appeal
followed. 

 

Batson Challenge

            In her
sole issue, McKenna contends that the trial court erred in denying her Batson
challenge.  Specifically, McKenna alleges that W & W Services engaged in
purposeful discrimination when it used its peremptory challenges to strike six
females from the venire. 

Applicable
Law 

            The Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution forbids a party from challenging potential jurors on the basis of
their gender.  J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 129, 114 S. Ct. 1419, 1421, 128 L. Ed. 2d 89 (1994); Fritz v. State,
946 S.W.2d 844, 847 (Tex. Crim. App. 1997); see also U.S. Const. XIV, § 1, cl. 4  (“No State
shall . . . deny to any person within its jurisdiction the equal
protection of the laws.”); Davis v. Fisk Elec. Co.,
268 S.W.3d 508, 510 (Tex. 2008) (acknowledging that gender based peremptory
challenges are unconstitutional).  The discriminatory use of peremptory
challenges denies a party the equal protection of the laws guaranteed by the
U.S. Constitution.  See Batson v. Kentucky, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716, 90 L. Ed. 2d 69 (1986).[2]  Moreover, the
discriminatory use of peremptory challenges denies equal protection of the laws
to the potential jurors.  See Powers v. Ohio, 499 U.S. 400, 409–11, 111 S. Ct. 1364, 1370–71, 113 L. Ed. 2d 411 (1991).  Any party has
standing to complain of such a violation, even if the party is not a member of
the group allegedly affected by the improper strike.  Id., 499 U.S. at 415–16, 111 S. Ct. at 1373–74.  

A
trial court follows a three step process to evaluate a claim that a party has exercised
a peremptory strike based on gender.  See Snyder v. Louisiana, 552
U.S. 472, __, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008).  First, the party
challenging the strike must make a prima facie showing  that the other party
has used a peremptory challenge to remove a potential juror on the basis of gender. 
See id.; Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995); Goode v. Shoukfeh, 943
S.W.2d 441, 445 (Tex. 1997).  A prima facie case may be established by relying solely
on evidence concerning the other party’s exercise of peremptory challenges.  See
Batson, 476 U.S. at 96, 106 S. Ct. at 1723.  However, it must also be
shown that these facts and any other relevant circumstances raise an inference
that the other party used that practice to exclude the potential juror on the
basis of gender.  See id.   

            Second,
if the prima facie showing has been made, the party who challenged the potential
juror must come forward with a gender neutral explanation.  See Snyder,
552 U.S. at __, 128 S. Ct. at 1207; Batson, 476 U.S. at 97-98, 106 S. Ct. at 1723-24.  A neutral explanation means that the challenge was based on
something other than the juror’s gender.  See Hernandez v. New York, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866-67, 114 L. Ed. 2d 395 (1991); Goode,
943 S.W.2d at 445.  The appellate court does not consider at the
second step whether the explanation is persuasive or even plausible.  See Goode,
943 S.W.2d at 445.  The issue for the trial court at this juncture is the
facial validity of the explanation.  See Id.  In evaluating
whether the explanation offered is gender neutral, a court must determine
whether the peremptory challenge violates the Equal Protection Clause as a
matter of law, assuming the reasons for the peremptory challenge are true.  See
Hernandez, 500 U.S. at 359, 111 S. Ct. at 1866; Goode,
943 S.W.2d at 445.  Unless a discriminatory intent is inherent in the
explanation, the reason offered will be deemed gender neutral for purposes of
the analysis at step two.  See Hernandez, 500 U.S. at 360, 111 S. Ct. at 1866–67; Goode, 943 S.W.2d at 445.  It is only upon
reaching the third step that the persuasiveness of the justification for the
challenge becomes relevant.  See Goode, 943 S.W.2d at 445.

At the third step, the
trial court must determine if the party challenging the strike has proven
purposeful discrimination, and the trial court may believe or not believe the
explanation offered by the party who exercised the peremptory challenge.  See
Id. at 445–46.  As part of that third step, the party challenging
the strike must be afforded the opportunity to rebut the explanation for the
strike.  See Davis, 268 S.W.3d at 514–15.  Thus, the party
challenging the strike must attack the other party’s gender neutral reasons as
being contrived or pretextual to conceal discriminatory intent.  See Jasper
v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).[3]  The
credibility of the other party’s reasons for disparate striking of potential
jurors can be measured by “the [other party’s] demeanor; by how reasonable, or
how improbable, the explanations are; and by whether the proffered rationale
has some basis in accepted trial strategy.”  See Miller–El v. Cockrell,
537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003) (“Miller–El
I”).   See “[A]ll relevant circumstances” must be analyzed.  Davis , 268 S.W.3d at 511 (quoting Miller–El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005)).  However, the ultimate burden
of persuasion remains with the party challenging the strike.  See Goode,
943 S.W.2d at 446.  Once a party has offered a gender neutral explanation for
the peremptory challenges and the trial court has ruled on the ultimate
question of intentional discrimination, the preliminary issue of whether the
party had made a prima facie showing becomes moot.  See Hernandez,
500 U.S. at 359, 111 S. Ct. at 1866 (quoting United States
Postal Serv. Bd.  of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed. 2d 403 (1983)); Goode, 943 S.W.2d at
445.

In
civil cases, we review a trial court’s Batson ruling for abuse of
discretion.  Davis, 268 S.W.3d at 515.[4]  A
trial court abuses its discretion if its decision is arbitrary, unreasonable,
and without reference to guiding principles.  Goode, 943 S.W.2d at
446.  The abuse of discretion standard is demanding and requires that deference
be given to the trial court, but it is not an insurmountable standard.  See
 Davis, 268 S.W.3d at 515.  We must be cognizant that “appellate
review of alleged Batson errors is not a hollow act.”  Id. at 516 (quoting Snyder, 552 U.S. at __, 128 S. Ct. at 1207).

Analysis

            At
trial, McKenna objected that W & W Services had struck six female members
of the venire.  Specifically, McKenna objected that W & W Services struck jurors
number 4, 14, 15, 22, 23, and 27, and described this as “prima [facie] gender
discrimination.”   One of the attorneys for W & W
Services was then sworn.  In response to questions from McKenna’s attorney,
counsel  explained the reasons for each of the six peremptory challenges.   

            Counsel
testified that juror number 4 works for “ACCESS,” and, based on his past
experience, those employees are extremely liberal.  McKenna claims that “ACCESS”
was never defined during the voir dire examination.  We note, however, that a potential
juror, in response to a question by McKenna’s counsel, stated that “ACCESS” is an
acronym for “Anderson-Cherokee County Enrichment Service,” a mental health
clinic run by Anderson and Cherokee Counties.  A juror’s occupation or
profession is a facially gender neutral reason.  See Davis, 268
S.W.3d at 521; see also Tompkins v. State, 774 S.W.2d 195, 205
(Tex. Crim. App. 1987).

            Counsel
stated further that juror number 14 exhibited a difficult attitude. 
Specifically, counsel testified that juror number 14 was listening to music,
and when another member of the venire asked  her to turn it down, she refused. 
Although the trial court failed to make an explicit finding that juror number 14
behaved in this manner, the court explicitly found that W & W Services’
reason for striking juror number 14 was gender neutral.  Further, sufficiently
specific “demeanor” explanations are facially gender neutral reasons.  See
 Davis, 268 S.W.3d at 519.  Counsel’s explanation of the
behavior upon which the peremptory challenge was based is sufficiently
specific.  See id.

            To
explain his strike of juror number 15, counsel stated that the juror and one of
the other attorneys had known each other for many years.  Because of a personal
matter between the two that arose out of their prior relationship, counsel did
not want her on the jury.  Counsel assured the trial court that the personal
matter “ha[d] nothing whatsoever to do with this case or with her being a
woman.”  This reason is facially gender neutral.

            Counsel
testified that juror number 22 was sitting next to a lady who did not want to
be at jury duty because she was sleepy.  He testified further that juror number
22 also stated she did not want to be there.  Counsel testified that he struck juror
number 22 because he feared she would be inattentive during the trial.  The
trial court failed to make an explicit finding that juror number 22 said
she did not want to be there.  However, the trial court explicitly found that W
& W Services’ reason for striking juror number 22 was gender neutral. 
Inattentiveness is a facially gender neutral reason for exercising a peremptory
strike.  See Dorsey v. State, 940 S.W.2d 169, 175 (Tex.
App.—Dallas 1996, pet. ref’d).   Further, sufficiently specific “demeanor”
explanations are also facially gender neutral reasons.  See Davis, 268 S.W.3d at 519.  And W & W Services identified the
conduct of juror number 22 with sufficient specificity.

            Counsel
testified that juror number 23 stated that she was a social worker.  He
explained that he struck juror number 23 because W & W Services objected to
a social worker, regardless of gender. A juror’s occupation is a facially gender
neutral reason.  See id. at 521.

            Finally,
counsel stated that the husband of juror number 27 was on a prior jury of one of
W & W Services’ attorneys and was the “one in the jury room that
almost hung the jury.”  Counsel  was concerned that his wife would be a similar
juror, and decided to exercise a peremptory strike to eliminate her from the
venire.  This reason is facially gender neutral.

            All
of the reasons for the strikes proffered by W & W Services’ attorney are
facially gender neutral.  Therefore, when the reasons are assumed to be true, it
cannot be said as a matter of law that there has been a violation of the Equal
Protection Clause.  See Hernandez, 500 U.S. at 359, 111 S. Ct. at
1866; Goode, 943 S.W.2d at 445.  Consequently, the trial court
proceeded to the third step of the analysis.  

Following
the testimony of W & W Services’ attorney, the trial court gave McKenna an
opportunity to develop a record to demonstrate that the reasons given for the
peremptory strikes were pretextual.  Instead, McKenna simply reiterated that W
& W Services struck six females, and stated that “we think that’s not
something that would normally occur if it hadn’t been for the fact that the
woman and – the plaintiff is a woman.”  An expression of disbelief is not
enough to show that a peremptory challenge is pretextual to conceal
discriminatory intent.  Mandujano v. State, 966 S.W.2d 816, 821 (Tex. App.–Austin 1998, pet. ref’d).  But in conducting our review, we must examine all
relevant factors bearing upon the trial court’s decision.  Davis,
268 S.W.3d at 511.

            At
the outset, we note that W & W Services used all of its strikes to
eliminate females from the venire.  This statistic is troubling when viewed in
isolation.  However, the record shows that 17 of the 24 potential jurors within
the strike zone, or 71%, were female.  Of these 17 females, W & W
Services struck 6, or 35%.  Of the remaining 11 females, 8 were actually seated
as jurors and comprised 67% of the jury.  Because of the high number of females
within the strike zone, we cannot say, without more, that the disparity in W
& W Services’ use of its peremptory strikes is attributable to something
other than “happenstance.”  See Miller–El I, 537 U.S. at 342, 123 S. Ct. at 1042 (concluding that disparity in use of strikes resulting in
exclusion of 91% of eligible African American venire members could not have
occurred by “happenstance”); Davis, 268 S.W.3d at 516
(“happenstance” unlikely to produce disparity where defendant struck 83% of
African Americans but only 5.5% of other eligible jurors).  Furthermore, W
& W Services’ disproportionate use of peremptory challenges merely supports
McKenna’s ultimate burden of persuasion.  See Watkins v. State,
245 S.W.3d 444, 452 (Tex. Crim. App. 2008).  But it does not alone establish
that W & W Services’ explanations of its strikes were pretextual. 
See id.

Second,
we note that neither McKenna or W & W Services elicited detailed
information about the jurors during voir dire.  Moreover, neither party introduced
the potential jurors’ questionnaires, the jury list, or the strikes of either
party into evidence or requested the inclusion of any of these items in the
appellate record.  Consequently, we cannot conduct a comparative juror
analysis.  See Miller–El v. Dretke, 545 U.S. 231, 241, 125 S. Ct.
2317, 2325, 162 L. Ed. 2d 196 (2005) (Miller–El II) (“If the []
proffered reason for striking a black panelist applies just as well to an
otherwise–similar nonblack who is permitted to serve, that is evidence tending
to prove purposeful discrimination to be considered at Batson’s
third step.”); Cantu v. State, 842 S.W.2d 667, 689 (Tex. Crim.
App. 1992) (discussing disproportionate treatment in light of comparative
analysis of jurors).

Third,
nothing in the record indicates that W & W Services requested a jury
shuffle, even though, as previously mentioned, the percentage of females in the
jury strike zone was unusually high.  See Watkins, 245 S.W.3d at
449 (citing [Miller–El II], 545 U.S. at 253–55, 125 S. Ct. at [2333])
(utilizing jury shuffle in manner supporting inference of race discrimination
to be considered at third stage of Batson analysis).  Fourth, a
review of W & W Services’ voir dire examination does not show that it asked
males and females contrasting questions on the same subject.  See id.
(use of contrasting questions designed to single out African American venire members
for elimination to be considered at third stage of Batson analysis).  


Fifth,
there is no evidence in the record that W & W Services had a
history of systematically excluding females from juries.  See Davis,
268 S.W.3d at 525 (citing [Miller–El II], 545 U.S. at [263], 125 S. Ct. at [2338]) (whether defendant had historically excluded African
Americans from juries to be considered at third stage of Batson analysis). 
And finally, the reasons provided by W & W Services for the
strikes are facially gender neutral when measured by “how reasonable, or how
improbable, the explanations are; and by whether the proffered rationale has
some basis in accepted trial strategy.”  See Miller–El I, 537 U.S. at 339, 123 S. Ct. at 1040.  

In
summary, we recognize that W & W Services failed to question the jurors on
matters relating to W & W Services’ proffered reasons for the peremptory
strikes.  Nevertheless, based on our review of the entire record, and giving
the required deference to the trial court’s ruling, we conclude that W & W
provided facially gender neutral explanations for its use of peremptory
challenges, and that McKenna failed to carry her burden to show that the stated
reasons were pretextual.  Consequently, we hold that the trial court’s decision
to deny McKenna’s Batson challenge was not an abuse of discretion. 
Accordingly, we overrule McKenna’s sole issue.

 

Disposition

Having
overruled McKenna’s sole issue, we affirm the judgment of the
trial court.

 

 

                                                                                    Brian T. Hoyle                                                                                                    
       Justice

 

 

 

Opinion delivered November 12,
2009.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









[1]
Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.
2d 69 (1986).

 





[2]
Although Batson involved a race based peremptory strike,
courts analyze all allegedly discriminatory strikes according to the steps laid
out in Batson.  See Guzman v. State, 85 S.W.3d 242,
245-46 (Tex. Crim. App. 2002).  

 





[3]
Because Texas criminal jurisprudence on Batson procedures
is much more developed than the civil jurisprudence, we examine Texas criminal
jurisprudence for guidance in applying Batson and its progeny to
civil matters. See Goode v. Shoukfeh, 643 S.W.2d 441, 450
(Tex. 1997) (recognizing that courts of appeals reviewing Batson challenges
in civil matters have often looked to Texas criminal jurisprudence for
guidance).  

 





[4]
In criminal cases, Texas appellate courts apply a “clearly erroneous”
standard.  See Guzman v. State, 85 S.W.3d 242, 254 (Tex. Crim.
App. 2002).